544 So.2d 261 (1989)
Colvin W. McDONALD, As Personal Representative of the Estate of Casey W. McDonald, a Deceased Minor Child, Appellant,
v.
Conlee PICKENS, M.D., and Hodnette Medical Center Clinic, P.A., a Florida Professional Association D/B/a Medical Center Clinic, P.A., Appellees.
No. 88-1126.
District Court of Appeal of Florida, First District.
May 17, 1989.
Rehearing Denied June 26, 1989.
*262 Stanley Bruce Powell of Powell, Jones & Reid, Niceville, for appellant.
James M. Wilson of Harrell, Wiltshire, Swearingen, Wilson & Harrell, P.A., Pensacola, for appellees.
MINER, Judge.
The sole issue presented in this timely appeal is whether the trial court erred in denying plaintiff/appellant's motion for a new trial, which motion was based upon evidence, discovered after the verdict, of a defense witness's allegedly false testimony. Finding that the trial judge did not abuse his discretion in denying the motion for new trial, we affirm.
In September of 1985, plaintiff/appellant, Colvin McDonald, filed a medical malpractice action against defendants following the death of his infant son, Casey, from bacterial meningitis. According to the record, in the early evening of June 6, 1985, Mr. and Mrs. McDonald noticed that their 10 month old son was slightly warm and that he refused to eat. Mrs. McDonald gave the child some Tylenol and put him down for the night. About three hours later, Mr. McDonald awakened his sleeping wife to tell her that the child was running a high fever and had vomited. Attempting to locate Casey's regular pediatrician, Dr. White, Mrs. McDonald called the defendant medical center where she was advised that defendant, Dr. Pickens, was on-call that evening. She called Dr. Pickens at home, described the child's symptoms and was advised to discontinue giving Casey Tylenol and to try a tepid bath to bring down his fever. After inquiring whether the child was irritable (a symptom which might suggest meningitis) and being told he was not, Dr. Pickens directed Mrs. McDonald to bring Casey to the clinic the following morning if his condition did not improve.
Casey's condition worsened and shortly after midnight Mrs. McDonald again called the clinic where she spoke only to a night telephone operator. Neither she nor Mr. McDonald called Dr. Pickens again. At around 5:00 a.m. Casey was discovered struggling for breath. He was rushed to the hospital emergency room, found to be in a coma and diagnosed as having meningitis. After four days in intensive care, the child died.
Plaintiff's complaint against Dr. Pickens alleged that he should have directed the McDonalds to take Casey to the emergency room when Mrs. McDonald first telephoned him at 10:30 p.m. and that the child probably would have survived had treatment begun at that time. Defendants contended that the first reported symptom did not indicate meningitis and that the child had such a rapidly spreading infection that he probably would not have survived even if treatment had begun at the time of the earliest symptom.
During the course of trial preparation, counsel for plaintiff and defendants met in North Carolina to take the video taped deposition for use at trial of defendants expert witness, Dr. Samuel Katz, Chairman of the Department of Pediatrics at Duke University Medical School. At that time it was not anticipated that Dr. Katz would be available to testify at trial and counsel for plaintiff apparently spoke informally with him prior to the deposition. As the deposition was concluding, plaintiff's counsel posed the following question to Dr. Katz:
Q: And just one last question. We established earlier off the record that you are not charging any fee in this case to give this testimony, that you are a volunteer. Is that correct?
A: That is correct.
Although the deposition was taken for trial purposes, Dr. Katz apparently decided at some later time that he could, indeed, travel to Pensacola for trial and did, in fact, testify at the trial. No questions regarding *263 his financial arrangement with defendant Pickens were asked. In addition, defendants presented three other pediatricians as expert witnesses, all of whom testified that Dr. Pickens was not negligent and that the child, more likely than not, would not have survived even had treatment begun after the first phone call from Mrs. McDonald. Plaintiff produced one expert witness who testified to the contrary.
Plaintiff also called Dr. Pickens as an adverse party witness and while no testimony was elicited from him regarding the fee arrangement with his expert witnesses, he was asked a series of questions designed to point out that each of his experts was a friend or acquaintance of his or a "volunteer" as plaintiff's counsel described them:
Q: And everyone of these people that you have testify is a volunteer, aren't they?
A: Yes, sir.
Q: Everyone of them have volunteered to come here to do what they are going to do?
A: Yes, sir.
On November 19, 1987, the jury returned a verdict for defendants. Two months later the defendants filed a motion to tax costs against plaintiff together with an affidavit of taxable costs. One of the items listed on the affidavit was the following:
(o) Samuel L. Katz, M.D., expert witness fee for reviewing records, research, preparation for and giving deposition, preparation for trial, travel time, and testifying at trial. $3000.00
Upon receipt of defendants' cost affidavit and motion, plaintiff filed a motion for a new trial or in the alternative to set aside the verdict based on Dr. Pickens' allegedly false trial testimony that his experts were volunteers and on Dr. Katz's allegedly false deposition testimony that he was not charging a fee. Defendants responded to plaintiff's motion, attaching two letters written by Dr. Katz to defense counsel. In one letter, written four months before his deposition, Dr. Katz wrote:
"Finally, I hope it was made clear in our initial telephone conversation that I shall not submit any bill for the time spent in reviewing these materials or in a deposition. Rather, I shall keep a log of the time involved and at the conclusion let you know how many hours were devoted to this and request a donation to the Research Fund of the Department of Pediatrics in an amount commensurate with what one might pay an expert witness."
On the day following the jury verdict in the instant case, Dr. Katz wrote:
"As far as the time is concerned spent in telephone calls, reviewing records, meeting with you, the televised deposition and the trip to testify in Pensacola, I already have told you there will be no personal charge for my services. However, we would be pleased if there were a donation to our Departmental Research Fund for any amount up to $3,000. This should be mailed to my attention and drawn to the order of Research Fund, Department of Pediatrics, Duke University School of Medicine."
In denying the motion for new trial, the trial judge made no express finding with respect to the allegations of false testimony from Dr. Pickens and/or Dr. Katz but, citing to Louisville and Nashville R.R. Co. v. Hickman, 445 So.2d 1023 (Fla. 1st DCA 1983) and Action Fire Safety Equipment, Inc. v. Biscayne Fire Equipment Co., Inc., 398 So.2d 942 (Fla. 3rd DCA 1981) ruled that:
 assuming arguendo false testimony may have been presented, that it was not material but only related to the issue of bias of the witnesses for impeachment purposes; therefore, a new trial would not be warranted in light of the standards recognized under existing precedent.
From the trial court's order, this appeal ensued.
As a general rule, to warrant a new trial on the basis of newly discovered evidence, the movant must establish that such evidence (1) is such that it would probably change the result if a new trial were granted; (2) has been discovered since the trial and could not have been *264 discovered before trial by due diligence; and (3) is material and not merely cumulative or impeaching. 38 Fla.Jur.2d New Trial, Sec. 56. However, there may be instances where the general new trial requirements are relaxed. For instance, where it is shown that the prevailing party in a civil case knowingly gave or used false testimony, a new trial may be granted at the trial court's discretion without a showing that the newly discovered evidence would probably produce a different result. Alston v. Shiver, 105 So.2d 785 (Fla. 1958). Also, there may be cases where newly discovered evidence may warrant a new trial notwithstanding that the evidence goes only to the impeachment of a witness. Kline v. Belco, Ltd., 480 So.2d 126 (Fla. 3rd DCA 1985). With respect to the due diligence requirement, Roberto v. Allstate Insurance Co., 457 So.2d 1148 (Fla. 3rd DCA 1984) stands for the proposition that a party is not required to anticipate false testimony from the opposing party and, therefore, is not required to discover evidence that would refute the false testimony.
Whether a motion for new trial is based upon allegedly false testimony or some other recognized ground, it is a motion directed to the sound discretion of the trial court and a ruling on the motion will only be set aside if abuse of that discretion is apparent from the record. See Louisville and Nashville R.R. Co. v. Hickman, supra. In this case, our review of the record does not reveal such abuse.
First, it can reasonably be argued that Dr. Katz's deposition statement regarding a fee was not false at all but rather was consistent with what appears from the above quoted letters to be a clear distinction in his mind between "charging a fee" for his services and requesting a "research donation" to Duke Medical School. In any event, it would be difficult to find that Dr. Katz knowingly gave false testimony at a deposition so that a new trial could be granted without a showing that the newly discovered evidence would probably have changed the outcome of the trial.
Secondly, we do not believe that the newly discovered evidence of Dr. Katz's financial arrangement with defense counsel was truly impeaching. It appears unlikely that the details of this arrangement would have negatively affected his credibility in the eyes of the jury. If anything, the fact that Katz was requesting a research donation to the medical school in lieu of receiving dollars for his personal use would tend to bolster his credibility rather than impeach it.
In addition to Dr. Katz's deposition testimony, plaintiff's motion for a new trial also contained an argument that Dr. Pickens presented false testimony during trial by agreeing that each of the defense expert witnesses was a "volunteer". Since that argument has not been included in appellant's brief it is not cognizable on appeal. However, even assuming that the point had been properly raised, the portions of the trial transcript included as appellant's appendix suggest that Dr. Pickens' testimony was likewise not false. Taken in context, both plaintiff's counsel's questions and Dr. Pickens' answers implied only that the defense witnesses were "volunteers" in the sense that they were his friends or colleagues and had agreed to testify at the trial of their own free will and not under compulsion of any subpeona. The questions and answers give no indication with regard to whether these defense witnesses were to be compensated for their testimony.
The most troubling aspect of this case is that it is before us at all on the issue raised. It would not be had counsel for defendant offered the details of his financial arrangement with Dr. Katz when the matter was raised at deposition. While the record does not reflect the content of plaintiff's counsel's "off the record" conversation with Dr. Katz, counsel's "on the record" question obviously sought to elicit information concerning Katz's financial stake in the case, if any. If there was a distinction in Dr. Katz's mind between "fee" and "donation" there should have been none in defense counsel's mind. A fee is a fee is a fee if it is for services *265 rendered regardless of whether it goes into Dr. Katz's personal bank account or, at Katz's direction, becomes legal tender for the purchase of test tubes or laboratory animals. Revelation of financial arrangements should not be made to depend on the precise mix of words chosen to frame a question if the purpose of the question is obvious. This is particularly true in cases such as this which are frequently decided on the basis of whose expert is the most credible. Moreover, the matter before us could have been, should have been and would have been avoided had defense counsel given his cost affidavit more attention in its preparation and submission. We accept his explanation that the $3000 item to reimburse Dr. Katz was included by mistake or inadvertence and was not the product of collusion between himself, Dr. Pickens and Dr. Katz. Such seems a logical explanation given the fact that the able and observant attorney on the other side of the case would be expected to question such an item of cost, which did, in fact, occur and which triggered this whole brouhaha.
THE ORDER APPEALED FROM IS AFFIRMED.
ZEHMER and BARFIELD, JJ., concur.