879 So.2d 1223 (2002)
Morris HARRIS, Appellant,
v.
STATE of Florida, Appellee.
Nos. 1D00-3775, 1D00-4749.
District Court of Appeal of Florida, First District.
April 26, 2002.
Opinions on Denial of Rehearing October 4, 2002.
*1224 Nancy A. Daniels, Public Defender, Robert S. Friedman, Assistant Public Defender, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General, Thomas H. Duffy, Assistant Attorney General, Tallahassee, for Appellee.
ERVIN, J.
These consolidated appeals raise various issues resulting from appellant's involuntary civil commitment as a sexually violent predator pursuant to the Jimmy Ryce Act (sections 394.910-931, Florida Statutes (1999)).[1] Case number 00-3775 is an appeal from a final order of involuntary commitment, and case number 00-4749 is an appeal from a post-judgment order denying appellant's motion to enforce. Because we reverse and remand on an issue which is common to both appeals, urging that the lower court erred in denying appellant's motion to enforce his plea agreement, we do not address the remaining points raised in these consolidated cases.
In the appeal from the order denying the motion to enforce the plea agreement and sentence, Harris claims the state breached the agreement after he had served practically all of the agreed-upon sentence, by filing a petition requesting that he be declared a sexually violent predator and civilly committed. Because we agree that the lower court erred in refusing to enforce the plea agreement, which was binding on both parties, we reverse the order of denial and remand the case for proceedings consistent with this opinion.
The plea agreement that Harris and the state entered into in 1995 provided that he *1225 would be sentenced to a term of 15 years' imprisonment for the offense of committing a lewd and lascivious act on a child under the age of 16 years,[2] and, at the conclusion of seven years' incarceration, the remainder of the sentence would be suspended and he would be placed on probation with the special condition that he complete a sex offender treatment program. He alleged that the state violated the contract in that on May 27, 1999, four days before his tentative release date from prison, it filed a petition seeking his civil commitment under the Ryce Act. The lower court denied the motion to enforce, ruling that the state had not reneged on its earlier promises because at the time of the agreement in 1995, the Ryce Act had not yet been enacted into law;[3] the civil commitment was an unforeseen, collateral consequence of the crime; and because the court found appellant was serving probation while awaiting trial in the civil proceeding.[4] Shortly after the entry of this order, the case proceeded to nonjury trial, and after presentation of the evidence, the judge found by clear and convincing evidence that appellant was a sexually violent predator requiring civil commitment. Harris thereafter filed his appeal from the order denying enforcement of the plea agreement and the order civilly committing him.
Florida courts have routinely held that a defendant who was not informed that he was subject to civil commitment under the Ryce Act is not entitled to withdraw a guilty or nolo contendere plea to a charged offense on the ground that the plea was not knowingly and voluntarily entered, because such commitment is deemed a collateral, not a direct consequence, of the plea. See, e.g., Nelson v. State, 780 So.2d 294 (Fla. 1st DCA 2001); Donovan v. State, 773 So.2d 1264 (Fla. 5th DCA 2000); Pearman v. State, 764 So.2d 739 (Fla. 4th DCA 2000); Oce v. State, 742 So.2d 464 (Fla. 3d DCA 1999), cause dismissed, 763 So.2d 1044 (Fla.2000); LaMonica v. State, 732 So.2d 1175 (Fla. 4th DCA 1999); Burkett v. State, 731 So.2d 695 (Fla. 2d DCA 1998); Collie v. State, 710 So.2d 1000 (Fla. 2d DCA 1998); Benitez v. State, 667 So.2d 476 (Fla. 3d DCA 1996). The case at bar, however, does not involve the issue of the voluntariness of Harris's plea. Rather, appellant asserts that the state breached the plea agreement, thereby requiring either that the agreement be specifically enforced, or that he be allowed to withdraw his plea and proceed to trial.[5]
A case which is perhaps the most factually similar to that at bar is Acosta v. State, 784 So.2d 1137 (Fla. 3d DCA 2000), involving the Third District's per curiam denial of Acosta's petition for writ of certiorari. As did Harris below, Acosta filed a motion for enforcement of the plea agreement, complaining that the state had reneged on its contractual obligation. The trial court denied the motion for the reason *1226 that commitment under the Ryce Act is civil rather than criminal. Acosta then sought certiorari review of the order. Although the majority's reasoning for its denial in Acosta is not set out, Judge Ramirez, in his concurring opinion, explained that Acosta argued that the state had violated the plea agreement by bringing a civil action against him, and Acosta had relied upon a case which involved a civil forfeiture proceeding. Judge Ramirez pointed out that the case Acosta cited was distinguishable, because the forfeiture provision was a significant factor in the defendant's plea agreement, while the Jimmy Ryce Act was not even enacted until years after Acosta's plea, and, therefore, could not have been within the parties' contemplation when they agreed on the terms of the plea.
In that the Third District did not explain its rationale, other than in Judge Ramirez's concurring opinion, the Acosta decision cannot be considered even persuasive authority. Moreover, the fact that neither of the parties in the case at bar contemplated the subsequent passage of the Ryce Act at the time the agreement was struck in 1995, does not relieve the state of its obligation to comply with the terms of its contract, as Judge Ramirez suggests.
We likewise find Murray v. Kearney, 770 So.2d 273 (Fla. 4th DCA 2000) (on reh'g), review granted, 791 So.2d 1100 (Fla.2001), is distinguishable because it is in a substantially different procedural position than the present case. In Murray, the defendant sought specific performance of the plea agreement before the trial court after his civil commitment as a sexually violent predator. When the motion was denied, he filed a petition for writ of habeas corpus in the Fourth District Court of Appeal. In denying the petition, the court noted at the outset that its "habeas jurisdiction is limited to determining whether the challenged order was entered without jurisdiction or is illegal." Id. at 274. The court observed that the civil commitment was legal because the trial court clearly had jurisdiction to entertain civil commitment proceedings under the Ryce Act, and it noted that Harris had "raised no argument that his confinement violates the requirements of the act under which his confinement was obtained." Id. at 275 (footnote omitted).
Unlike Harris, the petitioner in Murray did not raise the issue before the trial court of whether the state had violated its plea agreement; instead, he argued that the commitment was illegal, because it violated the plea agreement. Nevertheless, the court specifically noted that even if the state violated the plea agreement by bringing a civil commitment action against Murray, such facts still would not make the civil commitment order illegal, because Murray qualified as a sexually violent predator under the Ryce Act. Id. In contrast to Murray, Harris raised the issue that the state violated the plea agreement in the Ryce Act proceeding and the criminal proceeding, and is directly appealing the court's rulings in both proceedings. Because he timely raised this issue before the trial court, he is entitled to review of the question whether civil commitment violates the terms of the plea agreement, which was not decided in Murray.
Insofar as the issue of whether the state can be regarded as breaching its agreement, we consider it immaterial that one's confinement under the Ryce Act has been held a collateral, rather than a direct consequence, of a defendant's plea.[6] Harris *1227 bargained for and was led to believe that in exchange for his agreement to surrender certain rights, most notably, that of trial by jury, he would receive a fifteen-year sentence, and, after service of seven years, the remaining portion of the sentence would be suspended and served on probation, during which time he would receive treatment as a sex offender. By pursuing civil commitment under the Ryce Act, the state has breached the plea agreement in regard to the terms of the sentence.
In our judgment, this is a classic case for the application of the doctrine of equitable estoppel, the elements of which are (1) a representation as to a material fact that is contrary to a later-asserted position; (2) reliance on that representation; and (3) a change in position detrimental to the party claiming estoppel, caused by the representation and reliance thereon. See Dep't of Revenue v. Anderson, 403 So.2d 397, 400 (Fla.1981); Mandarin Paint & Flooring, Inc. v. Potura Coatings of Jacksonville, Inc., 744 So.2d 482, 485 (Fla. 1st DCA 1999). Elements one and two of the doctrine are easily satisfied in that the state clearly represented to Harris the sentence he would receive in exchange for his plea, and he relied on the representation.
As to the third element, we consider that the state subsequently changed its position in a manner detrimental to Harris by filing the civil commitment action against him. Although a court of equity will not demand that a contract be specifically enforced against a party who, due to future circumstances, is unable to comply with the agreement, compare Standard Lumber Co. v. Florida Industrial Co., 106 Fla. 884, 141 So. 729 (1932), we note that the legislature's later passage of the Ryce Act did not render the state's future compliance with the agreement impossible. The state attorney was given the discretion whether to file a civil commitment action against Harris. Section 394.914, Florida Statutes (1999), provides: "Following receipt of the written assessment and recommendation from the multidisciplinary team, the state attorney, in accordance with s. 394.913, may file a petition with the circuit court alleging that the person is a sexually violent predator and stating facts sufficient to support such allegation." (Emphasis added.) As a result, the state attorney was clearly under no compulsion to file a petition to seek civil commitment against Harris. In so acting, it violated its own solemn agreement that appellant serve no more than a split sentence of incarceration and probation.
Nothing less than specific performance of the contract can accord Harris justice. As the United States Supreme Court noted in Santobello v. New York, 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971):
This phase of the process of criminal justice [the plea proceeding], and the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is reasonably due in the circumstances. Those circumstances will vary, but a constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.
Justice Douglas specially concurred, making the following observations:

*1228 Where the "plea bargain" is not kept by the prosecutor, the sentence must be vacated and the state court will decide in light of the circumstances of each case whether due process requires (a) that there be specific performance of the plea bargain or (b) that the defendant be given the option to go to trial on the original charges. One alternative may do justice in one case, and the other in a different case. In choosing a remedy, however, a court ought to accord a defendant's preference considerable, if not controlling, weight inasmuch as the fundamental rights flouted by a prosecutor's breach of a plea bargain are those of the defendant, not of the State.
Id. at 267, 92 S.Ct. 495.
Santobello involved the violation of a plea agreement wherein the prosecutor agreed that he would make no recommendation to the trial court as to a particular sentence. A different prosecutor later breached the agreement by recommending the maximum sentence. The Supreme Court, by assuming jurisdiction over the case, considered the breach a violation of the defendant's Sixth Amendment right to trial by jury, or the "`right not to plead guilty.'" Id. (Marshall, J., concurring and dissenting) (citation omitted).
Florida's appellate courts have followed the recommendations of Justice Douglas in Santobello; some cases permitting, under the particular circumstances, withdrawal of the plea, and others, specific performance. In Hunt v. State, 613 So.2d 893, 898 (Fla. 1992), the court commented, relying on Santobello, that if the state breaches the terms of a plea agreement, a defendant is entitled to either specific performance of the agreement or withdrawal of the plea. The court continued that it considered specific performance necessary in the case before it in order to do justice. Id. Accord Eulo v. State, 786 So.2d 43 (Fla. 4th DCA 2001); Espinosa v. State, 688 So.2d 1016 (Fla. 3d DCA 1997); Buffa v. State, 641 So.2d 474 (Fla. 3d DCA 1994); Spencer v. State, 623 So.2d 1211 (Fla. 4th DCA 1993).
In the case at bar, specific performance of the plea agreement is the only effective means of carrying out the agreement. Permitting Harris the option of withdrawing his plea after serving nearly the entire incarcerative portion of his sentence is obviously an unjust remedy, and one, moreover, which he does not seek.
In our opinion, the state breached its plea agreement to allow Harris the privilege of seeking treatment as a sexual offender during the probationary period of his sentence by seeking civil commitment shortly before he had completed the incarcerative portion of his sentence. Because, however, the issue we decide appears to be one of first impression, and other courts have reached a different result on somewhat analogous facts,[7] we certify to the Florida Supreme Court the following question to be of great public importance:
MAY THE STATE INITIATE DISCRETIONARY CIVIL COMMITMENT PROCEEDINGS UNDER THE RYCE ACT (PART V OF CHAPTER 394, FLORIDA STATUTES) WHERE, BY SEEKING CIVIL COMMITMENT, THE STATE WOULD VIOLATE THE TERMS OF A PLEA AGREEMENT PREVIOUSLY ENTERED INTO WITH THE DEFENDANT?
*1229 The post-judgment order denying appellant's motion to enforce the plea agreement and sentence in case number 00-4749 is REVERSED and REMANDED with directions that the court specifically enforce the parties' plea agreement. Based upon this disposition, the final civil commitment order in case number 00-3775 is also REVERSED and REMANDED for proceedings consistent with this decision.
BENTON, J., concurs with opinion. POLSTON, J., dissents with opinion.
BENTON, J., concurring.
The sovereign State of Florida should be held to its lawful agreements. "Men naturally trust in their government, and ought to do so, and they ought not to suffer for it." Menges v. Dentler, 33 Pa. 495, 500 (1859).
Our Government [state no less than federal] should not by picayunish haggling over the scope of its promise, permit one of its arms to do that which, by any fair construction, the Government [of Florida] has given its word that no arm[8] will do.
Heckler v. Cmty. Health Servs., 467 U.S. 51, 61 n. 13, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984) (quoting St. Regis Paper Co. v. United States, 368 U.S. 208, 229, 82 S.Ct. 289, 7 L.Ed.2d 240 (1961) (Black, J., dissenting, joined by Whittaker and Stewart, JJ.)).
The Legislature has not said otherwise. What is now codified as sections 394.913 and 394.9135, Florida Statutes (2001), does make assessment of certain convicts mandatory as their periods of incarceration (would otherwise) come to an end. After this mandatory assessment, however, the decision whether to file a petition alleging that somebody is a "sexually violent predator" subject to indefinite internment thereafter lies wholly within the discretion of the state attorney. See § 394.914, Fla. Stat. (2001) ("[T]he state attorney . . . may file a petition with the circuit court alleging that the person is a sexually violent predator. . . .") (emphasis supplied).
Only after the plea bargain had been struck and sentence had been pronounced in the present case, moreover, did the "Jimmy Ryce Involuntary Civil Commitment for Sexually Violent Predators' Treatment and Care Act," Ch. 98-64 § 1, at 446, Laws of Fla. (codified as §§ 916.31.49, Fla. Stat. (Supp.1998)), take effect, on January 1, 1999. See Ch. 98-64, § 24, at 455, Laws of Fla. Since amended,[9] these provisions are now located in Part V, Chapter 394 of the Florida Statutes, entitled "Involuntary Civil Commitment of Sexually Violent Predators," See Ch. 99-222, § 1, at 1373, Laws of Fla. (codified as §§ 394.910-.931, Fla. Stat. (1999)). Nothing in the statutory scheme precludes the state attorney's keeping his office's word by honoring a preexisting plea bargain.
The sentence to which Morris Harris and the state attorney's office agreed required him to spend seven years in prison, followed by eight more years in prison, unless he successfully completed eight years on probation with conditions including *1230 "no unsupervised contact with minor children" and "sex offender counseling." See § 948.03(4), Fla. Stat. (Supp.1994). Probation was part of the bargain, even though facts giving reason to believe any probationary condition had been breached would have justified immediate arrest.
The prosecutor's office is an entity and as such it is the spokesman for the Government. A promise made by one attorney must be attributed, for these purposes, to the Government. See Restatement (Second) of Agency § 272. See also American Bar Association, Project on Standards for Criminal Justice, Discovery and Procedure Before Trial § 2.1(d).
Giglio v. U.S., 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). By executing the plea agreement at issue here, the prosecutor bound the State of Florida itself, as well as the state attorney, to honor the agreed-upon disposition, so long as the trial judge approved. In exchange for this promise, Morris Harris waived his right to trial (and the whole panoply of rights under the Florida and federal constitutions that entails), when he entered a plea of nolo contendere. Evincing judicial approval of this disposition and the underlying agreement, the trial judge accepted the plea and pronounced the sentence the parties had agreed upon.
The State is bound. Alluding to and expanding upon Justice Holmes' original pronouncement that "[m]en must turn square corners when they deal with the Government," Rock Island, A. & L.R. Co. v. United States, 254 U.S. 141, 143, 41 S.Ct. 55, 65 L.Ed. 188 (1920), the seven-member majority in Heckler, 467 U.S. at 61 n. 13, 104 S.Ct. 2218 adopted language from Justice Black's dissent in St. Regis Paper Co.:
It is no less good morals and good law that the Government should turn square corners in dealing with the people than that the people should turn square corners in dealing with their government.
See also United States v. Winstar Corp., 518 U.S. 839, 886 n. 31, 116 S.Ct. 2432, 135 L.Ed.2d 964 (1996) (plurality opinion) (Souter, J., joined by Stevens, Breyer and O'Connor, JJ.); Fed. Crop Ins. Corp. v. Merrill, 332 U.S. 380, 387-388, 68 S.Ct. 1, 92 L.Ed. 10 (1947) (Jackson, J., dissenting) ("It is very well to say that those who deal with the Government should turn square corners. But there is no reason why the square corners should constitute a one-way street.").
Plea bargains serve many purposes. The prosecutor may have had good reason to believe that Morris Harris would have been acquitted at trial if the State had not induced his plea by promising limited incarceration. Surely it is possible that the prosecutor, defense counsel and Morris Harris all thought that "sex offender probation" offered the best chance for his rehabilitation and the public's safety alike. As far as this record reveals, the supervision and counseling he would have received while on probation (if the State had not dishonored the plea agreement) would have led to an eventual assessment by the multidisciplinary team rendering him ineligible for lifelong incarceration as a "sexually violent predator."
Commentators report: "At the current time, the most accepted forms of treatment are cognitive behavior therapies within a relapse prevention model, with at times adjunctive use of certain psychopharmacologic[al] approaches." Judith V. Becker & William D. Murphy, What We Know and Do Not Know About Assessing and Treating Sex Offenders, 4 Psychol. Pub. Pol'y & L. 116, 128 (1998) (citations omitted). "This model also focuses not only on the offender developing internal self-management strategies, but also on *1231 the development of external management strategies such as supervision by parole or probation officers, family members, or other designated people in the community." Id. According to another commentator, the "availability of treatment for sex offenders. . . serving probationary periods is crucial to preventing further crimes." Jean-Peters Baker, Challenging Traditional Notions of Managing Sex Offenders: Prognosis Is Lifetime Management, 66 UMKC L.Rev. 629, 673 (1998). The same source states: "Even though the motivation for treatment is mandatory and forced by the criminal justice system this is not found to be a roadblock for effectively treating offenders." Id. at 671-72.
Whatever Morris Harris's motivations were, he was entitled to the benefit of his bargain. See Minor v. United States, 396 U.S. 87, 99, 90 S.Ct. 284, 24 L.Ed.2d 283 (1969) (Douglas, J., dissenting) ("When the present all-powerful, all-pervasive Government moves to curtail the liberty of the person, it too should turn square corners."); Brandt v. Hickel, 427 F.2d 53, 57 (9th Cir.1970) ("To say to these appellants, `The joke is on you. You shouldn't have trusted us,' is hardly worthy of our great government"); see also Giglio, 405 U.S. at 154-155, 92 S.Ct. 763.
I join Judge Ervin's opinion without reservation, including the certification of this important and probably recurring question, so that our supreme court will have an opportunity to address it.
POLSTON, J. dissenting.
Appellant Morris Harris was found to be a sexually violent predator pursuant to what is commonly known as the Jimmy Ryce Act. See §§ 394.910-394.931, Fla. Stat. (1999)(entitled "Involuntary Civil Commitment of Sexually Violent Predators"). Appellant was committed to the custody of the Department of Children and Family Services for control, care, and treatment until such time as his mental abnormality or personality disorder has so changed that it is safe for him to be at large.
Section 394.912(10) defines "sexually violent predator" as any person who:
(a) Has been convicted of a sexually violent offense; and
(b) Suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for long-term control, care, and treatment.
A "sexually violent offense" is defined to include a lewd, lascivious, or indecent assault or act upon or in the presence of a child in violation of section 800.04. See § 394.912(9)(e), Fla. Stat. (1999).

I. Convictions of Sexually Violent Offense
Appellant was convicted of two sexually violent offenses. Either of these convictions standing alone would satisfy the requirement of section 394.912(10)(a). The majority is reversing Appellant's commitment under the Jimmy Ryce Act because of a plea agreement in Case No. 95-315, the second of his two convictions.

A. 92-765 CFA

The victim in this case, a shy and soft-spoken 14 year-old girl at the time of the offense, described to the Child Protection Team what the Appellant did:
Mr. Harris is a friend of her mother and initially he called the house looking for her [mother]. The next time, he called again for her mother, but then said he was coming over and wanted to give her something. Mr. Harris went to her grandmother's next door first and at about 6:00 p.m. came to her house. He entered the house and sat on the long *1232 couch next to [her]. She recalled she wore a "pull-over shirt and a skirt." She was sitting forward on the couch and Mr. Harris reached up her shirt, unfastened her bra and touched her breasts. [The victim] told him to stop and he replied, "Why, you a virgin?" He then put his hand "down in my skirt" and touched her vagina outside her panties. [The victim's] cousin [ ] came over to use the telephone and Mr. Harris got up, leaving shortly afterwards. On one occasion, Mr. Harris called [the victim] and she hung up on him. He called back and stated, "Bitch, don't you hang up on me. Don't you know I'll shoot you if you ever hang up on me again.?"
[The victim] reported that "two Friday's ago," Mr. Harris arrived at approximately 7:00 p.m. accompanied by a "lady" who remained in the white meat truck while he came in the house. [The victim] described the lady as having short hair and dark skin; Mr. Harris told her it was someone he worked with. Mr. Harris "put me in my Momma's room and pulled my clothes off." She recalled that she wore black shorts and a multi-colored shirt; he wore blue shorts and a yellow shirt. [The victim] further stated, "He took his private out. . . . pulled his pants down half way and put it in me." She made him take it out by telling him she did not want to get pregnant. Mr. Harris then told her, "I want to do it doggy style." [The victim] refused. She instructed him to leave, then her brother [ ] arrived. [Her brother] asked Mr. Harris for a cigarette; Mr. Harris left shortly thereafter. [The victim] stated that on the Sunday following this incident, Mr. Harris "said he'd hurt me if I told anyone."
Appellant pled nolo contendere and was adjudicated guilty of one count of an attempted sexual act with a child under 16 years old in violation of section 800.04(3).

B. 95-315 CFA

Appellant repeatedly sexually abused his girlfriend's granddaughter when she was 6 to 8 years old. She told the Child Protection Team that Appellant "slammed me down on the bed, he took off his clothes, he took off my clothes, and he stuck his penis in my private." The victim told Appellant to stop, and he said that he couldn't stop. She described the Appellant as "hunching" her like grownups do in bed, and described various other incidents with a variety of sexual acts attempted and performed. Appellant threatened to whip her if she told anyone of these incidents.
Appellant was charged with one count of sexual battery on a child under 12, and with one count of lewd, lascivious, or indecent assault on a child under 16 years of age in violation of section 800.04(1). In accordance with his plea agreement, Appellant was adjudicated guilty of the lewd and lascivious charge, and the State nolle prossed the sexual battery charge. The plea agreement also specified that Appellant would be sentenced to a term of 15 years' imprisonment with a suspended sentence at the end of 7 years, at which time he would be placed on probation with the special condition that he complete a sex offender treatment program.
Appellant satisfied the requirement for a sexually violent offense pursuant to section 394.912(10)(a) with convictions from these two cases. The conviction from Case No. 92-765, standing alone without the issue of enforcing the plea agreement in Case No. 95-315, is sufficient to satisfy section 394.912(10)(a).

II. Mental Abnormality or Personality Disorder
The State presented unrebutted expert testimony by Ted Shaw, Ph.D., that Appellant *1233 could be diagnosed with "Paraphelia NOS and Personality Disorder NOS." Dr. Shaw considered Appellant to be "a significant risk to the community." The State also presented unrebutted expert testimony by Alan J. Waldman, M.D., that Appellant has Pedophilia, Sexually Attractive to Females, Nonexclusive Type:
I opine with reasonable medical certainty that Morris Harris is a Sexually Violent Predator as defined by the Jimmy Ryce Act [citation omitted]. Mr. Harris has continued inappropriate sexual drives that include early adolescent females and has displayed pedophilic attraction and behavior of a preplanned variety. There is no indication that he has reformed or learned anything about the control, or the abnormality of his drives. For the reasons stated, he is an unacceptable risk to reoffend. I recommend the Civil Commitment of Morris Harris under the Jimmy Ryce Act for treatment of his Pedophilia and Polysubstance abuse and dependence.
Therefore, the trial court properly found, pursuant to section 394.912(10)(b), that Appellant suffers from a mental abnormality or personality disorder that makes him likely to engage in acts of sexual violence if not confined in a secure facility for long-term control, care, and treatment.

III. Motion to Enforce Plea Agreement and Sentence
Appellant raises various legal arguments on appeal, but because the majority reversed on the trial court's denial of Appellant's Motion to Enforce Plea Agreement and Sentence, the other issues are not reached. I respectfully dissent.
Appellant argues that he should be released after 7 years of prison and placed on probation in accordance with the terms of his plea agreement in Case No. 95-315 CFA. The trial court properly ruled that Appellant's criminal plea agreement has not been violated because the Jimmy Ryce Act is a civil commitment rather than a criminal action, and the civil commitment is a collateral consequence of the prior crime. Moreover, compliance with the Jimmy Ryce Act is not a violation of the plea agreement because the Act was unknown to the parties at the time the plea agreement was entered. The trial court also ruled that Appellant's probation term began at the end of his 7-year prison term, notwithstanding his civil commitment.[10]
Appellant's commitment pursuant to the Jimmy Ryce Act is civil rather than criminal. The Florida Legislature expressly stated its intent that the Act be considered civil in nature, and Florida courts have construed it in that manner. See § 394.910, Fla. Stat. (1999); see, e.g., Westerheide v. State, 767 So.2d 637, 644-46 (Fla. 5th DCA 2000)(upholding constitutionality of the Act, citing Kansas v. Hendricks, 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997)), review granted, 786 So.2d 1192 (Fla.2001). Therefore, Appellant's plea agreement in Case No. 95-315 is in a criminal proceeding separate from the civil commitment under the Act. Because these are separate events, the plea agreement has not been breached by the civil commitment.
As the trial court reasoned, just as a defendant could be subject to a Baker Act commitment although scheduled for probation pursuant to a plea agreement, in the same manner Appellant is affected by a separate proceeding that is a different event. See Murray v. Kearney, 770 So.2d 273 (Fla. 4th DCA 2000), review granted, 791 So.2d 1100 (Fla.2001).
*1234 In Murray, the Petitioner moved for specific performance of the plea agreement, asking that he be released from his commitment under the Jimmy Ryce Act to serve his agreed probation. The court ruled:
Petitioner challenges the order of commitment as illegal, because he claims that the commitment violates his plea agreement which would have permitted him to be released into the community for probation and completion of a sex offender treatment program. However, the commitment order was not entered in the criminal proceeding, in which the court may consider whether the state violated the plea agreement. Instead, the Department of Children and Families instituted a new civil commitment proceeding, based upon clinical evaluations of petitioner's present state.
Although we recognize that the petitioner views his continued confinement as part of his incarceration from his plea, the law does not make this legal joinder any more than it would if the petitioner were committed under the Baker Act after his incarceration had been completed and while he was on probation. Moreover, the trial judge considered that petitioner's probation continued while he was committed under the Involuntary Civil Commitment for Sexually Violent Predators Act. Therefore, the trial judge was well aware that he was dealing with two separate proceedings.
Murray, 770 So.2d at 274-75. The trial court in this case was also well aware that he was dealing with two separate proceedings and properly denied the motion to enforce the plea agreement.
Similarly, the court in Collie v. State, 710 So.2d 1000 (Fla. 2d DCA 1998), held that Collie's designation as a sexual predator under the Florida Sexual Predator's Act did not violate his plea agreement. Collie argued that the designation as a sexual predator breached his agreement because it imposed punishment beyond what was contractually agreed to. 710 So.2d at 1008. Noting that the sexual predator designation was a collateral consequence of the guilty plea, the court held that Collie's plea agreement was not violated by his subsequent designation. Id. The court further supported its ruling that there was no breach of contract on the basis that the sexual predator designation is not a form of punishment, and concluded that "the Act should apply regardless of whether the offender was convicted after trial or through a plea bargain." Id.
As in Collie, Appellant's commitment under the Jimmy Ryce Act is a collateral consequence of his plea agreement,[11] and commitment under the Act is not a form of punishment.[12] Therefore, Appellant's plea agreement was not breached by the State.
Moreover, the trial court properly noted that the State did not breach the plea agreement by committing Appellant under the Jimmy Ryce Act because the Act did not exist at the time the agreement was *1235 made. In Acosta v. State, 784 So.2d 1137, 1138 (Fla. 3d DCA 2000) (Ramirez, J., concurring), Acosta filed a motion to enforce his plea agreement that was denied by the trial court on the basis that his commitment pursuant to the Jimmy Ryce Act was a civil action rather than a criminal action. Judge Ramirez noted that Acosta's plea agreement was made prior to the Jimmy Ryce Act, therefore the parties could not have contemplated or negotiated his post-incarceration civil commitment, and Acosta "cannot rely on a contingency that neither party contemplated at the time of execution of their agreement." Id.
The trial court further noted that Appellant cited Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971) and other cases, in support of his motion to enforce the plea agreement, that involved "situations in which the government had knowledge of certain circumstances at the time of the plea, agreed to a plea, and later reneged on the agreement." I agree with the trial court that the facts do not support such an argument in this case, and that Santobello, cited by the majority, does not apply.
Appellant's argument for equitable estoppel should also be rejected for the same reasons described above. The plea agreement in the criminal proceeding is a separate event from the civil commitment that was not contemplated by the parties. Therefore, Appellant could not have relied on any representations by the State to his detriment regarding civil commitment, and the State has not changed its position from the plea agreement.
Accordingly, I would affirm the trial court's denial of Appellant's Motion to Enforce Plea Agreement and Sentence.

ON MOTIONS FOR REHEARING AND REHEARING EN BANC
ERVIN, J.
At the oral argument in this case, counsel for the state represented that appellant is "not on probation" while civilly committed, and that if and when he successfully completes treatment and is released, he will begin serving the probationary portion of his split sentence. We noted the concession that appellant is not on probation in footnote 4 of the original opinion.
In its motion for rehearing and rehearing en banc, the state now argues that its concession "was ill-advised and in error." The motion states that the Department of Corrections' (DOC's) Internet website shows that appellant is currently on active probation, as illustrated by the offender search printout attached to the motion. Counsel argues that the trial court's finding that appellant is actually serving probation while committed under the Jimmy Ryce Act was correct, and the court's conclusion that the state breached the plea agreement to allow appellant to serve probation after incarceration is an incorrect statement of the law. The state asserts that appellant is, in fact, receiving sexual offender treatment during the probationary period of his sentence and that it has honored the plea agreement.
We do not agree with the state's belated argument that appellant is currently on active probation while confined under the Ryce Act to the custody of the Department of Children and Family Services (DCFS).[1] *1236 Appellant's sentence provided that he would be placed on probation "under supervision of the Department of Corrections." Section 948.001(5), Florida Statutes (1995), defines probation as "a form of community supervision requiring specified contacts with parole and probation officers and other terms and conditions as provided in s. 948.03." Subsection 948.03(4), Florida Statutes (1995), permits out-patient treatment for sex offenders, but appellant clearly is not receiving "out-patient treatment." Subsection 948.03(7) does permit residential treatment, and section 948.01(8), Florida Statutes (1995), refers to probationary residential treatment under the jurisdiction of DOC or the Department of Health and Rehabilitative Services (now the DCFS), but neither appellant's sentence nor the order setting forth the original terms and conditions of probation imposed residential sex-offender treatment with the DCFS as a condition of his probation.
We further note that the Ryce Act specifically states that those committed thereunder shall be "committed to the custody of the Department of Children and Family Services for control, care, and treatment[.]" § 394.917(2), Fla. Stat. (1999). Thus, under the statutory definition of probation and its long-established meaning, as understood by layman and lawyer alike, including the assistant attorney general during oral argument in the present case, it cannot be said that appellant is on active probation while committed under the Ryce Act to the custody and control of the DCFS.
Even if it could be said that appellant is currently on active probation while in the custody of DCFS, this would raise a double jeopardy issue, because of the change in probationary conditions his internment represents. As explained in Lippman v. State, 633 So.2d 1061, 1064 (Fla.1994), the double jeopardy provisions of the United States and Florida Constitutions protect individuals from multiple punishments arising from enhancement of the conditions of probation, absent proof of grounds for revocation. Here, the order establishing the terms and conditions of probation provided for sex-offender treatment, but not for residential sex-offender treatment. Thus, if appellant were considered to be on active probation while committed to the care and custody of DCFS, the terms of his probation have been improperly enhanced from nonresidential to residential sex-offender treatment without a violation of probation. Id. See also Schutte v. State, 824 So.2d 308 (Fla. 1st DCA 2002) (reversing amended probation order entered more than 60 days after the initial probation order, because the amended order imposed additional statutorily mandated conditions for sex offenders).
We deny the motions for rehearing and rehearing en banc on the above issue for the reasons stated. We deny the motions on the remaining points, because they are not matters this court has overlooked or misapprehended.
This court certifies these additional questions to the Florida Supreme Court as matters of great public importance:
*1237 IS A PLEA AGREEMENT FOR PRISON TIME FOLLOWED BY PROBATION VIOLATED WHEN THE STATE LATER INITIATES DISCRETIONARY CIVIL COMMITMENT PROCEEDINGS UNDER THE JIMMY RYCE ACT (PART V OF CHAPTER 394, FLORIDA STATUTES)?
IN THE CIRCUMSTANCES DESCRIBED IN THE FIRST QUESTION, IS THE STATE BARRED BY EQUITABLE ESTOPPEL FROM SEEKING CIVIL COMMITMENT?
BENTON, J., CONCURS; POLSTON, J., DISSENTS WITH OPINION.
POLSTON, J., dissenting.
As indicated in the court's earlier opinion, the trial court found that appellant was serving probation. Appellant raised no issue on appeal concerning this ruling by the trial court. Therefore any issue regarding whether appellant is currently serving probation was waived and is not before the court. See McDonald v. Pickens, 544 So.2d 261, 264 (Fla. 1st DCA 1989)(ruling that an argument not included in appellant's brief is not cognizable on appeal); Pagan v. State, 830 So.2d 792, 810-11 (Fla.2002)(ruling that arguments of error before the reviewing court must be made with specificity or they will be deemed waived); Florida Emergency Physicians-Kang and Associates, M.D., P.A. v. Parker, 800 So.2d 631, 636 (Fla. 5th DCA 2001)(stating that the reviewing court does not address issues not clearly set out in the issues on appeal).
Because appellant did not challenge the trial court's ruling that appellant was serving probation, appellee was understandably not prepared at oral argument to address appellant's probation status or whether appellant could legally serve probation while committed under the Jimmy Ryce Act. The State's motion for rehearing indicates that to the extent the court considered its oral argument as a concession on appellant's probation status, the concession was in error, and advised the court that appellant is currently on active probation. The majority states that it does not agree "with the state's belated argument that appellant is currently on active probation," and concludes that appellant is not on probation. The appellant, not the State, had the burden of timely raising this issue but failed to do so and thereby waived it. I cannot reach the merits of the majority's conclusion that appellant is not on probation because it was determined notwithstanding the lack of briefing on this issue by the parties and without record support.
The double jeopardy issue raised by the court was not argued by appellant and is wrong. See Kansas v. Hendricks, 521 U.S. 346, 369, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997)(rejecting double jeopardy argument because the Kansas Sexually Violent Predator Act does not establish criminal proceedings and is not punitive).
I respectfully dissent.
NOTES
[1] This is appellant's second appearance before this court in case number 00-3775. In Harris v. State, 766 So.2d 1239 (Fla. 1st DCA 2000), Harris sought common law certiorari review of an order denying his motion to dismiss the state's petition to commit him as a sexually violent predator on the ground, among other things, that the proceedings violated the terms of his prior plea agreement. The court denied the petition without prejudice to Harris's right to raise the issue in an appeal from the final commitment order, which has now been entered.
[2] This offense is a second-degree felony, a violation of section 800.04(1), Florida Statutes (1995).
[3] The Act became effective as of January 1, 1999. See Ch. 98-64, § 24, at 455, Laws of Fla.
[4] Because the state essentially conceded during oral argument that the last finding was incorrect, in that it acknowledges that appellant's probationary term will not commence until appellant is released from confinement as a sexually violent predator, we will not further address this finding in our opinion.
[5] For the same reason, a number of out-of-state cases relied upon by the state for affirmance are similarly distinguishable. See Martin v. Reinstein, 195 Ariz. 293, 987 P.2d 779 (Ct.App.1999); In re Hay, 263 Kan. 822, 953 P.2d 666 (1998); In re Ashman, 608 N.W.2d 853 (Minn.2000); State v. Zanelli, 212 Wis.2d 358, 569 N.W.2d 301 (Ct.App.1997).
[6] The Fourth District has stated that "[t]he determination of whether a consequence of a plea is direct or collateral `turns on whether the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment.'" Pearman v. State, 764 So.2d 739, 741 (Fla. 4th DCA 2000) (quoting Zambuto v. State, 413 So.2d 461 (Fla. 4th DCA 1982)).
[7] See In re Bailey, 317 Ill.App.3d 1072, 251 Ill.Dec. 575, 740 N.E.2d 1146, 1153 (2000); In re Kunshier, 521 N.W.2d 880, 885-86 (Minn.Ct.App.1994); In re Blodgett, 490 N.W.2d 638, 647 (Minn.Ct.App.1992); In re Detention of Campbell, 139 Wash.2d 341, 986 P.2d 771, 780-81 (1999) (en banc), cert. denied, 531 U.S. 1125, 121 S.Ct. 880, 148 L.Ed.2d 789 (2001).
[8] Only "one arm" is involved in the present case, the state attorney's office. The very governmental entity that entered into the written agreement that induced the defendant to accept incarceration for seven years has reneged on that part of the same agreement that would allow him to be admitted to probation now that the seven years have elapsed. The state attorney's office filed a petition which has the effect of rendering the plea agreement nugatory, and augurs a day when the government's solemn word signifies nothing.
[9] The amendments took effect on May 26, 1999. See Ch. 99-222, § 29, at 1389, Laws of Fla.
[10] I do not understand the State to have conceded anything contrary during oral argument as the majority states. Appellant raises no issue on appeal regarding this ruling.
[11] See Pearman v. State, 764 So.2d 739, 741 (Fla. 4th DCA 2000) (collecting cases; "We agree with the state that the effects of the Jimmy Ryce Act on appellant are collateral consequences of the plea."); Watrous v. State, 793 So.2d 6, 10 (Fla. 2d DCA 2001)(concluding that commitment under the Jimmy Ryce Act is a collateral consequence of the plea; collecting cases from other state and federal courts reaching the same conclusion regarding similar statutes allowing for the civil commitment of sexual predators).
[12] See Westerheide, 767 So.2d at 645-48 (holding that the Jimmy Ryce Act does not violate the constitutional prohibitions against ex post facto laws, citing Kansas v. Hendricks, 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997)).
[1] We disagree with Judge Polston's conclusion that appellant did not raise the issue of whether he was on probation while civilly committed. Appellant argued in Case No. 1D00-4749 that the state's filing of a petition for civil commitment under the Jimmy Ryce Act violated the terms of the plea agreement, wherein the state agreed to a split sentence consisting of seven years of incarceration followed by eight years of probation. He clearly argued below in support of his motion to enforce the plea agreement that civil commitment is not probation, i.e., a form of community supervision, and that argument is subsumed in his argument on appeal wherein he states that the plea agreement provided that he would be on probation after incarceration and that civil commitment breached that plea agreement. To adopt Judge Polston's position, one must overlook or ignore the statutory definition of probation.