881 So.2d 1079 (2004)
STATE of Florida, Petitioner,
v.
Morris HARRIS, Respondent.
State of Florida, Petitioner,
v.
Donald Gentes, Respondent.
Nos. SC02-2172, SC02-2440.
Supreme Court of Florida.
May 13, 2004.
Rehearing Denied August 30, 2004.
*1080 Charles J. Crist, Jr., Attorney General, James W. Rogers, Tallahassee Bureau Chief, Criminal Appeals, and Thomas H. Duffy, Assistant Attorney General, Tallahassee, FL; and Richard L. Polin, Senior Assistant Attorney General, Miami, FL, for Petitioner.
Nancy A. Daniels, Public Defender, and Robert S. Friedman, Assistant Public Defender, Second Judicial Circuit, Tallahassee, FL, for Respondents.
CANTERO, J.
In these consolidated cases we consider whether the State breaches a plea agreement under which a defendant is sentenced to a term of imprisonment followed by probation, with no mention of civil commitment, when the State later initiates civil commitment proceedings under the Jimmy Ryce Act. The First District Court of Appeal held that it did, but certified the following questions of great public importance:
MAY THE STATE INITIATE DISCRETIONARY CIVIL COMMITMENT PROCEEDINGS UNDER THE RYCE ACT (PART V OF CHAPTER 394, FLORIDA STATUTES) WHERE, BY SEEKING CIVIL COMMITMENT, THE STATE WOULD VIOLATE THE TERMS OF A PLEA AGREEMENT PREVIOUSLY ENTERED INTO WITH THE DEFENDANT?
IS A PLEA AGREEMENT FOR PRISON TIME FOLLOWED BY PROBATION VIOLATED WHEN THE STATE LATER INITIATES DISCRETIONARY CIVIL COMMITMENT PROCEEDINGS UNDER THE JIMMY RYCE ACT (PART V OF CHAPTER 394, FLORIDA STATUTES)?
IN THE CIRCUMSTANCE DESCRIBED IN THE FIRST QUESTION, IS THE STATE BARRED BY EQUITABLE ESTOPPEL FROM SEEKING CIVIL COMMITMENT?
Harris v. State, 879 So.2d 1223, 1228 (Fla. 1st DCA 2002), reh'g denied, 879 So.2d at 1237 (Fla. 1st DCA Oct.4, 2002). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. We decline to answer the first question because it assumes what we need to decide: whether the State breached the plea agreement. We answer only the latter two questions. Based on our decision in Murray v. Regier, 872 So.2d 217 (Fla. 2002), we answer those questions in the negative and quash the decision below.

I. FACTS
These consolidated cases involve similar facts, which we detail below. In both cases, the defendants executed plea agreements under which they were sentenced to a term of imprisonment followed by a period of probation. Neither agreement mentioned the possibility of involuntary civil commitment. The plea agreements were executed in 1995 (Harris) and 1993 (Gentes), before the Ryce Act became law, and therefore neither party could have contemplated the possibility of civil commitment. The Ryce Act became effective *1081 as of January 1, 1999. See Ch. 98-64, § 24, at 455, Laws of Fla. Subsequently, before their terms of incarceration expired, the State initiated civil commitment proceedings against them under the Ryce Act. The respondents claim that by doing so, the State has violated their plea agreements.

A. State v. Harris

In 1995, Morris Harris entered a plea of nolo contendere and was adjudicated guilty of two counts of lewd and lascivious assault on a child under sixteen years of age. He was sentenced to fifteen years in prison, with eight years of the sentence suspended for probation with sexual offender counseling.[1] On May 27, 1999, four days before Harris's tentative release date from prison, the State filed a petition seeking civil commitment under the Ryce Act. See §§ 394.910-.931, Fla. Stat. (1999). Harris then filed a motion to enforce the plea agreement and sentence in the 1995 criminal case, arguing that the involuntary civil commitment proceedings violated the plea agreement. The trial court denied the motion, finding that the State had not violated the plea agreement because (1) the Ryce Act had not been enacted at the time of the plea, (2) the civil commitment was an unforeseen, collateral consequence of the plea, and (3) Harris was serving probation while awaiting trial in the civil proceeding. Harris later filed a motion to dismiss the commitment petition, arguing that as applied to him, the Ryce Act constituted an ex post facto law and violated his right to due process. The trial court denied this motion as well.[2] After a non-jury trial, the trial court found by clear and convincing evidence that Harris met the criteria for civil commitment.
Harris appealed the verdict and the denial of the motion to dismiss, and the cases were consolidated. The First District reversed and remanded on both appeals, finding that "the state breached its plea agreement to allow Harris the privilege of seeking treatment as a sexual offender during the probationary portion of his sentence by seeking civil commitment shortly before he had completed the incarcerative portion of his sentence." Harris, 879 So.2d at 1228. The First District also certified the first question stated above. Id.
In denying the State's motions for rehearing and rehearing en banc, the First District issued another opinion addressing Harris's probationary status. Evidently, the State had represented at oral argument that Harris was not on probation while civilly committed, and would not begin serving probation until he successfully completed treatment and was released. 879 So.2d at 1235. On motion for rehearing, the State claimed that its concession "was ill-advised and in error." The State argued that Harris was receiving sexual offender treatment during the probationary period of his sentence, and thus, the State had honored the plea agreement. The First District disagreed that Harris was then currently on active probation while confined under the Ryce Act. Moreover, "[e]ven if it could be said that [Harris] is currently on active probation while in the custody of DCFS, this would raise a double jeopardy issue, because of the *1082 change in probationary conditions his internment represents." Id. The First District then certified the second and third questions stated above. Id. at 1236.

B. State v. Gentes

In 1993, Donald Gentes entered no contest pleas to five counts of lewd and lascivious assault and was sentenced to ten years in prison on two of the counts, the sentences to be served consecutively, to fifteen years' probation on two others (consecutive), and fifteen years' probation (concurrent with the other probation charges) on the final count. On May 14, 1999, an order of probation was entered, nunc pro tunc to October 22, 1993.
Before Gentes's release from prison, the State filed a petition for civil commitment. Gentes filed a motion to enforce the plea agreement and sentence, alleging that the State's petition for civil commitment breached the plea agreement because it placed him in a "prison-like setting." The trial court denied the motion.
Gentes appealed, and the First District reversed based on its prior decision in Harris. See Gentes v. State, 828 So.2d 1051 (Fla. 1st DCA 2002). The First District also certified the same questions as certified in Harris, but noted that only the two questions certified in the opinion on motions for rehearing need be considered because the question in the original Harris opinion "jumps over the central issue in the case by assuming the plea agreement was breached when the State sought civil commitment." Gentes, 828 So.2d at 1053. Although obligated to follow Harris, the panel in Gentes expressed its reservations about that decision. It noted that "the Harris holding may not be in concert with the apparent consensus of other states finding civil commitment of sexually violent predators, under similar state laws, does not violate the terms of a plea agreement." Gentes, at 1052 (citing several cases from other states). The court also noted that "our sister court has previously held that subsequent designation as a sexual violent predator under Florida law does not violate a plea agreement." Id. (citing Collie v. State, 710 So.2d 1000 (Fla. 2d DCA 1998)).
We now review this issue in these consolidated review proceedings.

II. DISCUSSION
The First District certified three questions to us, two of which we answer: (A) whether the State violates a plea agreement that sentences a defendant to a term of imprisonment followed by probation by initiating civil commitment proceedings under the Jimmy Ryce Act; and (B) whether, under such circumstances, principles of equitable estoppel prohibit the State from initiating civil commitment proceedings. We discuss each issue in turn.

A. Do civil commitment proceedings violate a prior plea agreement that did not mention such proceedings?
Respondents first allege that by later initiating civil commitment proceedings in each case, the State breached the plea agreements. The First District agreed. We do not. Instead, we hold that our recent decision in Murray v. Regier, 872 So.2d 217 (Fla. 2002), answers the question. The First District did not have the benefit of that decision because it was pending review in this Court at the time. See Murray v. Kearney, 770 So.2d 273 (Fla. 4th DCA 2000) (on rehearing), quashed sub nom. Murray v. Regier, 872 So.2d 217 (Fla. 2002).
The Ryce Act provides for the involuntary civil commitment of persons who are convicted of sexual offenses and found to be sexually violent predators. See generally Westerheide v. State, 831 So.2d 93 *1083 (Fla.2002). To commit a person under the Ryce Act, the State must prove by clear and convincing evidence that the person has been convicted of a sexually violent offense and suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for long-term control, care, and treatment. See §§ 394.912(10), 394.917. Therefore, although a prior criminal conviction of a sexually violent offense is a necessary condition for commitment, it is not sufficient in itself. As we emphasized in Westerheide, "involuntary commitment under the Ryce Act is based upon an individual's current mental state that makes it likely the person will engage in acts of sexual violence." 831 So.2d at 100 (plurality opinion). We also emphasized that involuntary civil commitments are civil in nature, not criminal: "[T]he affirmative restraint of `a small but extremely dangerous number of sexually violent predators' who `pose [a risk] to society' because they are `likely to engage in criminal, sexually violent behavior,' § 394.910, Fla. Stat. (2001), is a `classic example of nonpunitive detention.'" Westerheide, 831 So.2d at 100 (quoting Kansas v. Hendricks, 521 U.S. 346, 363, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997)).
In Murray, we considered whether the State's initiation of civil commitment proceedings violated a prior plea agreement that did not mention the possibility of such proceedings. We held that "any bargain that a defendant may strike in a plea agreement in a criminal case would have no bearing on a subsequent involuntary civil commitment for control, care, and treatment." 872 So.2d at 224. As in these cases, the petitioner had executed a plea agreement under which he was sentenced to a period of incarceration followed by probation. Before he was released, the State filed civil commitment proceedings under the Ryce Act. 872 So.2d at 219. Murray then filed a motion for specific performance of his plea agreement, arguing that he should be released to serve the agreed-upon probation. The case presented unique jurisdictional issues and bounced back and forth between two district courts of appeal. When the case reached this Court, we resolved the jurisdictional issue. We then addressed the merits of Murray's petition. We held that the petitioner was not entitled to relief because
[t]he plea agreement was part of a criminal proceeding against Murray whereas the commitment order was entered in a civil proceeding based upon clinical evaluations of Murray's present state.... Thus, Murray's involuntary commitment cannot be considered continued punishment for his criminal offense, but was based upon clinical evaluations of his present state. While Murray's previous conviction of a sexually violent offense satisfies one of the statutory criteria of a sexually violent predator, the other requirement is not related to his previous conviction.
872 So.2d at 223 (emphasis added). Most importantly, we then concluded
that any bargain that a defendant may strike in a plea agreement in a criminal case would have no bearing on a subsequent involuntary civil commitment for control, care, and treatment. Consequently, Murray's constitutional claim is without merit and he was not entitled to release from detention on that basis.
872 So.2d at 224 (emphasis added).
The respondents here argue that Murray does not apply to their cases because it arose from a habeas petition and involved unique jurisdictional issues. Neither the procedural history of that case, however, nor the jurisdictional issues involved *1084 affected our holding on the merits. Since our decision in Murray, several district courts of appeal, including the court that decided Harris and Gentes, have recognized its holding and have applied it outside the context of habeas corpus. See State v. Riddle, 862 So.2d 802 (Fla. 4th DCA 2003); State v. McFarland, 28 Fla. L. Weekly D2298, ___ So.2d ___, 2003 WL 22259634 (Fla. 1st DCA Oct.3, 2003); State v. Klein, 851 So.2d 274 (Fla. 5th DCA 2003); Marsh v. State, 849 So.2d 1178, 1181 (Fla. 3d DCA 2003); Krischer v. Ford, 847 So.2d 1050, 1051 (Fla. 4th DCA 2003); Sublett v. State, 842 So.2d 314, 315 (Fla. 5th DCA 2003); Sandillo v. State, 842 So.2d 1018, 1019 (Fla. 5th DCA 2003); Satz v. Runion, 838 So.2d 689, 689-90 (Fla. 4th DCA 2003); Krischer v. Faris, 838 So.2d 600, 602-03 (Fla. 4th DCA 2003); Garcia v. State, 847 So.2d 980, 980 (Fla. 4th DCA 2003).[3] No court has distinguished Murray. In fact, by applying Murray instead of Harris, the First District in McFarland implicitly acknowledged that Murray has disapproved Harris. See 28 Fla. L. Weekly at D2298, ___ So.2d at ___. We agree.

B. Does the doctrine of equitable estoppel prohibit the State from initiating civil commitment proceedings?
The second question we answer is whether under these circumstances equitable estoppel bars the State from seeking civil commitment. The First District found that "this is a classic case for the application of the doctrine of equitable estoppel." Harris, 879 So.2d at 1227.
The elements of equitable estoppel are (1) a representation as to a material fact that is contrary to a later-asserted position, (2) reliance on that representation, and (3) a change in position detrimental to the party claiming estoppel, caused by the representation and reliance thereon. See State Dep't of Revenue v. Anderson, 403 So.2d 397, 400 (Fla.1981).
The First District found that elements one and two "are easily satisfied in that the state clearly represented to Harris the sentence he would receive in exchange for his plea, and he relied on the representation." Harris, 879 So.2d at 1227. As to the third element, the First District concluded that "the state subsequently changed its position in a manner detrimental to Harris by filing the civil commitment action against him." Id. The court noted that the Legislature's subsequent passage of the Ryce Act did not render the State's future compliance with the agreement impossible, in part because the State is given discretion whether to file a civil commitment action. In other words, because the State "was clearly under no compulsion to file a petition," the State "violated its own solemn agreement that appellant serve no more than a split sentence of incarceration and probation." Id.
The First District's reasoning assumes that civil commitment under the Ryce Act is punishment. We already have held that it is not. See Westerheide, 831 So.2d at 98-104; see also § 394.910, Fla. Stat. (2000). Thus, the State, by initiating civil commitment actions against respondents, did not "change [its] position detrimental to the party claiming estoppel." The plea agreements are still completely in effect, notwithstanding the civil commitment.[4] *1085 Moreover, because respondents Harris and Gentes executed their plea agreements before the Ryce Act was enacted, neither party could have contemplated the possibility of involuntary civil commitment. Therefore, we agree with the dissent's position below that "[t]he plea agreement in the criminal proceeding is a separate event from the civil commitment that was not contemplated by the parties. Therefore, Appellant could not have relied on any representations by the State to his detriment regarding civil commitment, and the State has not changed its position from the plea agreement." Harris, 879 So.2d at 1235 (Polston, J., dissenting). We also note that "[a]s a general rule, equitable estoppel will be applied against the state only in rare instances and under exceptional circumstances." Anderson, 403 So.2d at 400. This is not one of them.

III. CONCLUSION
We apply Murray v. Regier and hold that the State does not violate a plea agreement for prison time followed by probation when it later initiates discretionary civil commitment proceedings under the Jimmy Ryce Act.[5] We answer the second and third certified questions in the negative, quash the decisions in Harris and Gentes, and remand these cases for proceedings consistent with this opinion.
It is so ordered.
ANSTEAD, C.J., and WELLS, PARIENTE, LEWIS and BELL, JJ., concur.
PARIENTE, J., concurs specially with an opinion, in which ANSTEAD, C.J., concurs.
QUINCE, J., concurs in result only with an opinion.
PARIENTE, J., specially concurring.
The defendants in these cases are not seeking to withdraw their pleas on grounds that the pleas were involuntarily entered. Rather, they seek relief upon the theories of specific performance and equitable estoppel. Because the enactment of the Jimmy Ryce Act (otherwise known as the Sexually Violent Predators Act) occurred subsequent to the plea agreements in these cases, I agree with the majority that relief based on these theories should not be granted. I also agree with the majority that applying Murray v. Regier, 872 So.2d at 217 (Fla. Dec. 5, 2002), to the instant cases is appropriate because the defendant in Murray raised the same claim for relief as Harris and Gentes  specific performance.[6]
Further, I concur in the referral to the Criminal Procedure Rules Committee in order to include as part of the standard *1086 plea colloquy a requirement that trial courts inform defendants of the potential for indefinite civil commitment under the Jimmy Ryce Act. In the interim, I urge trial courts, if they do not already do so, to immediately begin informing defendants who plead guilty to a sexually violent offense[7] of the State's right to seek civil commitment.[8] Regardless of the fact that sexual predator acts are labeled by courts as civil commitment proceedings, the actual effect of these acts is to confine defendants who have completed their criminal sentences to an indefinite term of commitment.
In this case, defendant Harris was to be released from prison in May of 1999 after serving a four-year sentence as the result of a plea of nolo contendere in 1995 to two counts of lewd and lascivious assault on a child under sixteen years of age. Five years later, Harris still remains committed pursuant to the Jimmy Ryce Act.
The reality is that the confinement is against the defendant's will and the confinement is in a prison-like environment. As Justice Breyer observed in Kansas v. Hendricks, 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997), discussing Kansas's Sexually Violent Predators Act, which is substantially similar to Florida's Sexually Violent Predators Act:
Certain resemblances between the Act's "civil commitment" and traditional criminal punishments are obvious. Like criminal imprisonment, the Act's civil commitment amounts to "secure" confinement and "incarceration against one's will." In addition, a basic objective of the Act is incapacitation, which, as Blackstone said in describing an objective of criminal law, is to "depriv[e] the party injuring of the power to do future mischief." ...
Moreover, the Act, like criminal punishment, imposes its confinement (or sanction) only upon an individual who *1087 has previously committed a criminal offense. And the Act imposes that confinement through the use of persons (county prosecutors), procedural guarantees (trial by jury, assistance of counsel, psychiatric evaluations), and standards ("beyond a reasonable doubt") traditionally associated with the criminal law.
521 U.S. at 379-80, 117 S.Ct. 2072 (Breyer, J., dissenting) (citations omitted) (alteration in original).
In light of the consequences of civil commitment, defendants who enter pleas of guilty or nolo contendere to sexually violent offenses subsequent to the passage of the Jimmy Ryce Act should be advised of the possibility that the State may seek their continued confinement after the term of imprisonment has ended. As the New Jersey Supreme Court recently observed, "when the consequence of a plea may be so severe that a defendant may be confined for the remainder of his or her life, fundamental fairness demands that the trial court inform [the] defendant of that possible consequence." State v. Bellamy, 178 N.J. 127, 835 A.2d 1231, 1238 (2003).
Finally, although I agree that Harris and Gentes are not entitled to specific performance, I reach no conclusion as to whether the failure to advise a defendant of the consequence of indefinite confinement under the Jimmy Ryce Act may render a plea involuntary and thus subject to withdrawal under Florida Rule of Criminal Procedure 3.170(l). However, once a trial court includes in the plea colloquy the potential for indefinite civil commitment, any claim of involuntariness on that basis will be eliminated.
ANSTEAD, C.J., concurs.
QUINCE, J., concurring in result only.
I concur in the result only in this case for the reasons outlined in my concurring in result only opinion in Westerheide v. State, 831 So.2d 93 (Fla.2002). I do agree that defendants who enter pleas of guilty or nolo contendere to sexually violent offenses should be informed that the State may seek further confinement pursuant to the Jimmy Ryce Act.
NOTES
[1] In 1993, Harris entered a plea of nolo contendere and was adjudicated guilty of one count of an attempted sexual act with a child under sixteen years of age. Harris was sentenced to a term of thirty months in prison on this charge.
[2] The First District denied Harris's petition for a writ of certiorari to review the trial court's ruling before trial. See Harris v. State, 766 So.2d 1239, 1241 (Fla. 1st DCA 2000) ("We find that an appeal from a final order is the adequate and appropriate remedy for denial of a motion to dismiss in this context, just as it is in virtually every other setting.").
[3] Several other courts have affirmed trial court orders without opinion, citing Murray. See Godboldt v. State, 28 Fla. L. Weekly D1928, ___ So.2d ___, 2003 WL 21939030 (Fla. 1st DCA Aug. 14, 2003); Ritchie v. State, 842 So.2d 234 (Fla. 5th DCA 2003); Viruet v. State, 847 So.2d 997 (Fla. 5th DCA 2003); Meadows v. State, 839 So.2d 747 (Fla. 4th DCA 2003); Crockett v. State, 834 So.2d 959 (Fla. 4th DCA 2003).
[4] We accept the State's representation that Harris is serving the probationary portion of his sentence while civilly committed. We therefore do not address whether the State would violate his plea agreement if his probation did not begin until after he was released from civil commitment.
[5] We note, however, that during the plea colloquy we believe it appropriate for the trial court to inform a defendant of the possible consequences of a guilty plea, namely that the defendant may be subject to civil commitment pursuant to the Ryce Act. We hereby refer this matter to the Criminal Procedure Rules Committee of the Florida Bar to formulate language addressing this requirement during the colloquy.
[6] I do not, however, agree with the Court's broad statement in Murray, a decision in which I did not participate, that "any bargain that a defendant may strike in a plea agreement in a criminal case would have no bearing on a subsequent involuntary civil commitment for control, care, and treatment." Id. at 224.
[7] The Jimmy Ryce Act applies to "sexually violent predators," who are those persons who have been convicted of a sexually violent offense and who suffer from "a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined." § 394.912(10), Fla. Stat. (2003). A "sexually violent offense" is defined as:

(a) Murder of a human being while engaged in sexual battery in violation of s. 782.04(1)(a)2.;
(b) Kidnapping of a child under the age of 13 and, in the course of that offense, committing: 1. Sexual battery; or
2. A lewd, lascivious, or indecent assault or act upon or in the presence of the child;
(c) Committing the offense of false imprisonment upon a child under the age of 13 and, in the course of that offense, committing:
1. Sexual battery; or
2. A lewd, lascivious, or indecent assault or act upon or in the presence of the child;
(d) Sexual battery in violation of s. 794.011;
(e) Lewd, lascivious, or indecent assault or act upon or in presence of the child in violation of s. 800.04;
(f) An attempt, criminal solicitation, or conspiracy, in violation of s. 777.04, of a sexually violent offense;
(g) Any conviction for a felony offense in effect at any time before October 1, 1998, which is comparable to a sexually violent offense under paragraphs (a)-(f) or any federal conviction or conviction in another state for a felony offense that in this state would be a sexually violent offense; or
(h) Any criminal act that, either at the time of sentencing for the offense or subsequently during civil commitment proceedings under this part, has been determined beyond a reasonable doubt to have been sexually motivated.
§ 394.912(9), Fla. Stat. (2003).
[8] I would also urge that the plea agreement that the defendant signs be revised to include a written acknowledgment of the potential for commitment under the Jimmy Ryce Act.