880 So.2d 1234 (2004)
Robert ROELING, Appellant,
v.
STATE of Florida, Appellee.
No. 1D03-1658.
District Court of Appeal of Florida, First District.
August 30, 2004.
*1236 Nancy A. Daniels, Public Defender; M. Lilja Dandelake, Assistant Public Defender, Tallahassee, for Appellant.
Charlie Crist, Attorney General; Thomas H. Duffy, Assistant Attorney General, Tallahassee, for Appellee.
WEBSTER, J.
Appellant seeks review following the entry of a "Final Order of Adjudication and Order of Commitment" adjudging him to be a "sexually violent predator" within the meaning of section 394.912(10), Florida Statutes (2002) (a part of what is commonly referred to as the "Jimmy Ryce Act"), and committing him to the custody of the Department of Children and Family Services for control, care and treatment in a secure facility pursuant to section 394.917(2), Florida Statutes (2002). He argues that the trial court should have (1) excluded expert opinion testimony regarding his propensity to commit acts of sexual violence in the future which was based in part on use of risk-assessment instruments because those "instruments have not gained general acceptance among psychiatrists, psychologists, and other mental health professionals and their use is limited to only a few psychologists who are attempting to predict sexual offense recidivism"; and (2) granted his motion for directed verdict because the state failed to carry its burden of proof on the element of lack of volitional control. We affirm as to the second argument without further discussion because it is clear that the argument was not preserved and, even if preserved, the evidence was more than sufficient to permit the jury to find as it did on the element of lack of volitional control. We also affirm as to the first argument because we conclude that the use of risk-assessment instruments in this case satisfied the requirements of Frye v. United States, 293 F. 1013 (D.C.Cir.1923).

I.
The state filed a petition to have appellant declared a "sexually violent predator" as that term is defined in section 394.912(10), Florida Statutes. Appellant responded with a "Motion To Exclude Testimony Regarding Risk Prediction," raising a Frye challenge to anticipated expert psychological opinion testimony regarding future dangerousness and risk prediction based in part on actuarial instruments such as the Rapid Risk Assessment for Sexual Offense Recidivism (RRASOR), the Static-99 (developed from the RRASOR), the Violence Risk Appraisal Guide (VRAG), the Sex Offender Risk Appraisal Guide (SORAG), the Minnesota Sex Offender Screening Tool-Revised (MnSOST-R) and the Sexual Violent Risk-20 (SVR-20). Appellant's motion was consolidated with those of 32 others for purposes of the Frye hearing.
At the Frye hearing, the parties presented the live testimony of two expert witnesses regarding the use of risk-assessment instruments as a tool in arriving at opinions as to an individual's propensity to commit acts of sexual violence in the future. The depositions of four additional experts were also received in evidence, all without objection. The testimony established that risk-assessment instruments are based on empirically derived actuarial data, resulting from years of research, that identify characteristics and the likelihood that one will reoffend based on the presence or absence of such characteristics. The trial court subsequently entered an order denying the motions seeking to exclude the expert testimony. In its order, the trial court said:
Based on the testimony received in evidence, this Court finds that the [state] has sufficiently established that *1237 the actuarial instruments used in Respondents' evaluations, as part of the assessment of their risk of recidivism, are supported by a clear majority of the members of the relevant scientific community, and are based on scientific principles that are sufficiently established to have gained general acceptance in the relevant field.... Furthermore, this Court finds that the testimony concerning the use of the actuarial instruments in Respondents' assessments will assist the jury in understanding the evidence before it.
During appellant's ensuing jury trial, four psychologists testified. All were of the opinion that appellant was highly likely to reoffend. Three of the four testified that they had used one or more commonly used risk-assessment instruments as one tool in arriving at their opinions. The risk assessments used included RRASOR, Static-99 and MnSOST-R. The jury unanimously found that appellant met the criteria for involuntary commitment pursuant to the Jimmy Ryce Act, and the trial court entered its order of adjudication and commitment. This appeal follows.

II.
Initially, the state argues that use of risk-assessment instruments as a tool in arriving at opinions as to an individual's propensity to commit acts of sexual violence in the future need not pass the Frye test because it is in the nature of the "pure opinion testimony" which our supreme court has recognized need not pass the Frye test, citing Flanagan v. State, 625 So.2d 827 (Fla.1993), and Hadden v. State, 690 So.2d 573 (Fla.1997). The state also points out that a number of other jurisdictions that have considered this question have concluded that this type of testimony is not "novel scientific evidence" and, therefore, Frye testing is unnecessary. See, e.g., In re Detention of Thorell, 149 Wash.2d 724, 72 P.3d 708 (2003); State v. Fields, 201 Ariz. 321, 35 P.3d 82 (Ct.App. 2001); Garcetti v. Superior Court, 102 Cal. Rptr.2d 214 (Ct.App.2000), rev'd on other grounds sub nom. Cooley v. Superior Court, 29 Cal.4th 228, 127 Cal.Rptr.2d 177, 57 P.3d 654 (2003); In re Commitment of Stevens, 345 Ill.App.3d 1050, 281 Ill.Dec. 415, 803 N.E.2d 1036 (2004); In re Detention of Holtz, 653 N.W.2d 613 (Iowa Ct. App.2002); Commonwealth v. Dengler, 843 A.2d 1241 (Pa.Super.Ct.2004). We are unable to agree with this argument.
In the first place, the state did not make this argument in the trial court. Moreover, it seems to us that the use of risk-assessment instruments is more akin to the use of "sexual offender profiles" at issue in Flanagan and the use of the "child sexual abuse accommodation syndrome" at issue in Hadden than to "pure opinion testimony," as that term was used in those two cases. In Flanagan, the court held that expert opinion testimony based in part on "sexual offender profiles" must meet the Frye test (625 So.2d at 828); and in Hadden, the court reached the same conclusion regarding expert opinion testimony based in part on the "child sexual abuse accommodation syndrome." 690 So.2d at 574-75. Accordingly, based on Flanagan and Hadden, we conclude that expert opinion testimony regarding an individual's propensity to commit acts of sexual violence in the future that is based in part on the use of risk-assessment instruments must pass the Frye test. We note that two other Florida district courts of appeal appear to have reached a similar conclusion, although neither discusses the issue. See Lee v. State, 854 So.2d 709 (Fla. 2d DCA) (concluding that the trial court did not err in admitting the testimony, after conducting a Frye hearing; and that, even if it did, any error was harmless), *1238 review pending, Case No. SC03-1608 (Fla. filed Sept. 8, 2003); Collier v. State, 857 So.2d 943 (Fla. 4th DCA 2003) (concluding that the state's evidence was insufficient to satisfy Frye). The same conclusion has also been reached by courts in New Jersey and Illinois. See In the Matter of the Commitment of R.S., 173 N.J. 134, 801 A.2d 219 (2002); In re Commitment of Lourash, 347 Ill.App.3d 680, 283 Ill.Dec. 428, 807 N.E.2d 1269 (2004).

III.
"[N]ovel scientific evidence is not admissible in Florida unless it meets the test established in Frye v. United States, 293 F. 1013(D.C.Cir.1923)," which requires that such evidence "`be sufficiently established to have gained general acceptance in the particular field in which it belongs.'" Flanagan, 625 So.2d at 828 (quoting Frye, 293 F. at 1014). Accord Hadden, 690 So.2d at 577-78; Ramirez v. State, 651 So.2d 1164, 1167 (Fla.1995) (Ramirez II). Among other things, "[t]his standard requires a determination ... that the basic underlying principles of scientific evidence have been sufficiently tested and accepted by the relevant scientific community." Brim v. State, 695 So.2d 268, 272 (Fla. 1997). As our supreme court has explained:
The underlying theory for this rule is that a courtroom is not a laboratory, and as such it is not the place to conduct scientific experiments. If the scientific community considers a procedure or process unreliable for its own purposes, then the procedure must be considered less reliable for courtroom use.
Stokes v. State, 548 So.2d 188, 193-94 (Fla. 1989). In other words, the Frye test is "designed to ensure that the jury will not be misled by experimental scientific methods which may ultimately prove to be unsound." Flanagan, 625 So.2d at 828 (citing Stokes).
When applying the Frye test, "the burden is on the proponent of the evidence to prove [by the greater weight of the evidence] the general acceptance of both the underlying scientific principle and the testing procedures used to apply that principle to the facts of the case at hand." Ramirez II, 651 So.2d at 1168. This requires more than "[a] bald assertion by the expert that his deduction is premised upon well-recognized scientific principles," particularly "if the witness's application of these principles is untested and lacks indicia of acceptability," or "if the expert has a personal stake in the new theory or is prone to an institutional bias." Ramirez v. State, 810 So.2d 836, 844, 844 n. 13 (Fla. 2001) (Ramirez III). As our supreme court has explained, "general scientific recognition requires the testimony of impartial experts or scientists. It is this independent and impartial proof of general scientific acceptability that provides the necessary Frye foundation." Id. at 851.
Our standard of review when considering a trial court's ruling on a Frye issue is de novo, rather than abuse of discretion. Murray v. State, 838 So.2d 1073, 1077-78 (Fla.2002); Ramirez III, 810 So.2d at 844; Brim, 695 So.2d at 274. Moreover, we must address the matter of general acceptance as of the time of appeal, rather than the time of trial. Ramirez III, 810 So.2d at 844-45 (citing Hadden, 690 So.2d at 579). In reaching our decision regarding general acceptance, we "may examine expert testimony, scientific and legal writings, and judicial opinions." Hadden, 690 So.2d at 579 (citing Flanagan, 625 So.2d at 828).

IV.
The testimony presented to the trial court provides substantial support for *1239 the proposition that the risk-assessment instruments used by the experts who testified regarding appellant's propensity to reoffend are a generally accepted diagnostic tool in the relevant scientific community (licensed clinical psychologists specializing in forensic psychology and the evaluation of sexually violent predators), and are based on scientific principles that are sufficiently established to have gained general acceptance in the relevant field. All of the experts except the one offered by appellant testified that they use such instruments on a regular basis; that they are generally accepted among forensic clinical psychologists who evaluate persons alleged to be sexually violent predators, provided they are used in conjunction with a clinical assessment (as those testifying in appellant's case did); and that the use of risk-assessment instruments in conjunction with a clinical assessment was a superior method of evaluating an individual to reliance on a clinical assessment alone. Even appellant's expert conceded that such instruments were being used "with great frequency by people doing these evaluations"; and that an evaluation based on only a clinical assessment would at best be equal to (but no better than) a pure actuarial approach.
The opinions relied upon by the trial court are, moreover, consistent with conclusions reached by a number of other psychologists, including those who have developed the actuarial tools and conducted cross-validation and meta-analyses to confirm their reliability. See, e.g., Judith V. Becker & Wm. D. Murphy, What We Know and Do Not Know About Assessing and Treating Sex Offenders, 4 Psychol., Pub. Pol'y & L. 116 (1998); Douglas L. Epperson et al., Cross-Validation of the Minnesota Sex Offender Screening Tool-Revised, ATSA Presentation, San Diego, CA (Nov. 3, 2000); Martin Grann et al., Actuarial Assessment of Risk for Violence: Predictive Validity of the VRAG and the Historical Part of the HCR-20, 27 Crim. Just. & Behavior 97 (2000); Wm. M. Grove & Paul E. Meehl, Comparative Efficiency of Informal (Subjective, Impressionistic) and Formal (Mechanical, Algorithmic) Prediction Procedures: The Clinical-Statistical Controversy, 2 Psychol., Pub. Pol'y & L. 293 (1996); R. Karl Hanson, What Do We Know About Sex Offender Risk Assessment?, 4 Psychol., Pub. Pol'y & L. 50 (1998); R. Karl Hanson & David Thornton, Improving Risk Assessments for Sex Offenders: A Comparison of Three Actuarial Scales, 24 L. & Human Behavior 119 (2000); R. Karl Hanson & Monique T. Bussiere, Predicting Relapse: A Meta-Analysis of Sexual Offender Recidivism Studies, 66 J. of Consulting & Clinical Psychol. 348 (1998); R. Karl Hanson & Andrew J.R. Harris, Where Should We Intervene?: Dynamic Predictors of Sexual Offense Recidivism, 27 Crim. Just. & Behavior 6 (2000); Robert D. Hare et al., Psychopathy and the Predictive Validity of the PCL-R: An International Perspective, 18 Behavioral Sci. & L. 623 (2000); Grant T. Harris et al., Appraisal and Management of Risk in Sexual Aggressors: Implications for Criminal Justice Policy, 4 Psychol., Pub. Pol'y & L. 73 (1998); Marnie E. Rice & Grant T. Harris, Cross-Validation and Extension of the Violence Risk Appraisal Guide for Child Molesters and Rapists, 21 L. & Human Behavior 231 (1997).
Finally, courts in Florida and other jurisdictions have also considered the admissibility of expert opinion testimony regarding propensity to commit acts of sexual violence in the future which is based in part on use of risk-assessment instruments. Not one court has held such testimony inadmissible as a matter of law. Rather, the debate has been over whether the testimony must pass the Frye test. *1240 See, e.g., In the Matter of the Commitment of R.S., 173 N.J. 134, 801 A.2d 219, 220 (2002) ("a testifying psychologist or psychiatrist may refer to actuarial risk assessment instruments used in the formation of the expert's opinion" because such instruments have gained sufficient acceptance to satisfy Frye); In re Detention of Thorell, 149 Wash.2d 724, 72 P.3d 708, 724-25 (2003) (such testimony is not subject to the Frye test because it does not involve "novel scientific evidence"); State v. Fields, 201 Ariz. 321, 35 P.3d 82, 89 (Ct.App.2001) ("the use of actuarial models by mental health experts to help predict a person's likelihood of recidivism is not the kind of novel scientific evidence or process to which Frye applies"); Garcetti v. Superior Court, 102 Cal.Rptr.2d 214, 238 (Ct.App. 2000) ("a psychiatrist's prediction of future dangerousness is not subject to a [People v.] Kelly [17 Cal.3d 24, 130 Cal.Rptr. 144, 549 P.2d 1240 (1976)]-Frye analysis and... it does not matter if the psychiatrist used clinical or actuarial models"), rev'd on other grounds sub nom. Cooley v. Superior Court, 29 Cal.4th 228, 127 Cal.Rptr.2d 177, 57 P.3d 654 (Cal.2003); Lee v. State, 854 So.2d 709, 712 (Fla. 2d DCA) (testimony based in part on RRASOR, MnSOST-R, VRAG and SORAG was properly admitted because the state's evidence satisfied the Frye test; even if permitting the testimony was error, it was harmless), review pending, Case No. SC03-1608 (Fla. filed Sept. 8, 2003); Collier v. State, 857 So.2d 943, 945-46 (Fla. 4th DCA 2003) (testimony based in part on SVR-20 must pass the Frye test; testimony should not have been admitted because the state's evidence did not satisfy Frye); In re Commitment of Stevens, 345 Ill.App.3d 1050, 281 Ill.Dec. 415, 803 N.E.2d 1036, 1044 (2004) ("actuarial risk-assessment instruments of the sort used in this casenamely, the Minnesota Screening Tool-Revised, the Static-99, and the Violence Risk Assessment Guidedo not purport to involve a scientific principle, method, or test to which Frye applies"); In re Commitment of Lourash, 347 Ill. App.3d 680, 283 Ill.Dec. 428, 807 N.E.2d 1269, 1274-75 (2004) (respondent was entitled to a Frye hearing where he could contest the admissibility of the evidence based on actuarial instruments used to measure his risk of recidivism, including the MnSOST-R and the Static-99); In re Detention of Holtz, 653 N.W.2d 613, 619 (Iowa Ct.App.2002) ("the district court ably summed up the issues and was correct in determining the evidence concerning actuarial risk assessment instruments went to the weight the evidence should receive as opposed to the issue of admissibility"); Commonwealth v. Dengler, 843 A.2d 1241, 1245 (Pa.Super.Ct.2004) (such testimony is not subject to the Frye test because it does not involve "novel scientific evidence").
Having carefully considered the testimony presented to the trial court, scientific and legal writings and judicial opinions, we conclude that the state has carried its burden to demonstrate by the greater weight of the evidence that expert opinion testimony regarding propensity to commit acts of sexual violence in the future which is based in part on use of the RRASOR, Static-99 and MnSOST-R risk-assessment instruments satisfies the Frye test. Accordingly, we conclude, further, that the trial court correctly denied appellant's "Motion to Exclude Testimony Regarding Risk Prediction" and permitted the state's experts to testify regarding appellant's propensity to commit acts of sexual violence in the future.

V.
For the reasons expressed in this opinion, the trial court's order denying appellant's "Motion to Exclude Testimony Regarding Risk Prediction" and its "Final *1241 Order of Adjudication and Order of Commitment" are affirmed.
AFFIRMED.
KAHN and BROWNING, JJ., concur.