898 So.2d 1164 (2005)
Carlos ORTEGA-MANTILLA, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D02-2336.
District Court of Appeal of Florida, Third District.
April 6, 2005.
*1165 Bennett H. Brummer, Public Defender, and Robert Godfrey, Assistant Public Defender, for appellant.
Charles J. Crist, Jr., Attorney General, and Thomas C. Mielke, Assistant Attorney General, for appellee.
Before GREEN, WELLS, and ROTHENBERG, JJ.
GREEN, J.
Carlos Ortega-Mantilla, a convicted sex offender, appeals a civil order declaring him a sexually violent predator and committing him indefinitely for treatment pursuant to the Jimmy Ryce Act ("Jimmy Ryce Act"). See §§ 394.910  .931, Fla. Stat. (1999). We affirm for the reasons that follow.
In 1990, Ortega-Mantilla was charged criminally, by information, with two counts of armed sexual battery and one count of kidnapping. On November 6, 1991, he and the State entered into a plea agreement by which he agreed to plea nolo contendere to the charges in exchange for a fifteen-year prison sentence to be followed by ten years of probation with the special condition that he receive counseling for mentally disordered sex offenders. Ortega-Mantilla's scheduled release date from prison was August 1, 1999. Just days prior to that date, however, the State filed a civil petition pursuant to the Jimmy Ryce Act seeking to have Ortega-Mantilla declared a sexually violent predator and indefinitely committed for treatment. Ortega-Mantilla, *1166 through counsel, answered the petition and raised affirmative defenses. In one of the affirmative defenses Ortega-Mantilla asserted that the State was equitably estopped from pursuing the civil commitment because of his plea agreement with the State.
The trial court preliminarily entered an order finding probable cause to believe that Ortega-Mantilla was a sexually violent predator, as defined in section 394.912(10), Florida Statutes,[1] and eligible for civil commitment. By virtue of this order, Ortega-Mantilla was detained during the pendency of the civil commitment proceeding.
Prior to the trial, the State moved to exclude any reference to a polygraph examination Ortega-Mantilla took at the request of his lawyers. The defense argued that it was not seeking to introduce the results of the polygraph, but was seeking, through its defense expert, to introduce evidence of a disclosure made by Ortega-Mantilla during the course of the examination. The trial court ruled that the State could hire its own polygrapher and that if the defense sought to introduce any polygraph evidence, all polygraph evidence would be admissible.
At the close of the trial, both sides moved for a directed verdict. Both motions were denied. The case was submitted to the jury, which unanimously found Ortega-Mantilla to be a sexually violent predator. As a result of this finding, Ortega-Mantilla was involuntarily committed to the Department of Children and Family Services for care, control, and treatment until such time as it is deemed safe for him to be released into the public at large. Ortega-Mantilla has timely perfected this appeal and raises six issues.

I
The appellant first argues that the State was equitably estopped from instituting this civil commitment action because he and the State had entered into a contractual plea agreement in 1991 pursuant to which he pled guilty to the criminal charges in exchange for a specific term of imprisonment followed by probation. We find no merit to this argument. After the appellant filed his amended initial brief in this appeal, the Florida Supreme Court addressed this precise issue in State v. Harris, 881 So.2d 1079 (Fla.2004). In Harris, the court held that the State does not violate a plea agreement when it later initiates a discretionary civil commitment proceeding under the Jimmy Ryce Act, nor does the doctrine of equitable estoppel preclude the initiation of such proceedings. Id. at 1085.

II
The appellant next contends that the trial court improperly permitted the State to elicit evidence that he was untruthful about his commission of prior sexual batteries during a polygraph examination. This evidence was admitted because the defense chose to inform the jury that its expert had utilized certain disclosures made by the appellant during polygraph examinations as part of the expert's evaluation of the appellant. The appellant nevertheless argues on appeal that he is entitled to a new trial because polygraph examination results are inadmissible in Florida. See Delap v. State, *1167 440 So.2d 1242, 1247 (Fla.1983); Frazier v. State, 425 So.2d 192, 193 (Fla. 3d DCA 1983).
Our review of the record, however, reveals that the defense objected to the admissibility of the polygraph results only on Frye[2] and/or hearsay grounds. Consequently, we find that this issue has not been adequately preserved for appellate review. Tillman v. State, 471 So.2d 32, 35 (Fla.1985) ("In order to be preserved for further review by a higher court, an issue must be presented to the lower court and the specific legal argument or ground to be argued on appeal or review must be part of that presentation if it is to be considered preserved."); Steinhorst v. State, 412 So.2d 332, 338 (Fla.1982); Castro v. State, 791 So.2d 1114, 1115 (Fla. 4th DCA 2000). Even, assuming arguendo, that it had been properly preserved, we conclude that, at best, any error was invited by the defense and, at worst, the error was harmless based on the record before us. See State v. DiGuilio, 491 So.2d 1129, 1139 (Fla.1986) (holding that the harmless error test requires a showing that "there is a reasonable possibility that the error affected the verdict."). See, e.g., Williams v. State, 841 So.2d 531 (Fla. 2d DCA 2003) (applying DiGuilio to civil commitment proceeding); Collier v. State, 857 So.2d 943, 946 (Fla. 4th DCA 2003) (same). Therefore, this argument presents no basis for reversal of the order.

III
The appellant next asserts that the trial court erred in allowing the State to qualify as an expert Dr. Karen Parker, the Clinical Director for Florida's Sexually Violent Predator Program, and in allowing her to testify about, among other things, the screening process or criteria for the commencement of a civil commitment proceeding.[3] Appellant argues that the testimony about the screening process that led to the filing of the civil commitment petition was irrelevant as he had not challenged it.
We agree that Dr. Parker's testimony regarding the process used in filing the petition for civil commitment against the appellant was irrelevant because the sole issue in this case was whether the appellant could be classified as a sexually violent predator. In order to establish this, the state was required to prove the following elements by clear and convincing evidence:
1) The appellant has been convicted of an enumerated sexually violent offense; and
2) The appellant suffers from a mental abnormality or personality disorder that makes him likely to engage in acts of sexual violence if not confined in a secure facility for long-term control, care, and treatment.
See §§ 394.912(9), .912(10), Fla. Stat. (1999); Hale v. State, 891 So.2d 517 (Fla.2004); Harris, 881 So.2d 1079.
The appellant correctly points out that Dr. Parker's testimony regarding the screening process was irrelevant to these issues, just as a State Attorney's testimony about the screening process used to determine whether to file charges against certain arrestees would be irrelevant in a criminal trial. Nevertheless, our review of the record reveals that this portion of Dr. Parker's testimony was not made a feature of the trial, nor was it repeated by either side during closing arguments. Therefore, we deem this error also to be harmless. See McQueen v. State, 848 So.2d 1220 (Fla. 1st DCA 2003); Williams v. State, 841 So.2d 531 (Fla. 2d DCA 2003).

*1168 IV
In his fourth issue on appeal, the appellant contends that the trial court erred in its determination, after a Frye hearing, that certain actuarial instruments were not scientific evidence subject to Frye, and, therefore, admissible. Those actuarial instruments, namely: 1) the Rapid Risk Assessment of Sexual Offense Recidivism ("RRASOR"); 2) the Static 99; 3) Minnesota Sex Offender Screening Tool-Revised ("MnSOST-R"); and 4) the Hare Psycopathy Checklist-Revised ("PCL-R"), purport to predict the propensity to commit future sexual offenses.
We agree with the appellant that the actuarial instruments are scientific evidence, and therefore, in order for them to be admissible, they must pass the Frye test. Although the trial court erred by finding that the actuarial instruments were not subject to the Frye analysis, we nonetheless find that they were properly admitted because they do pass the Frye test. In Roeling v. State, 880 So.2d 1234, 1239 (Fla. 1st DCA 2004), the court held that testimony regarding appellant's propensity to commit future acts of sexual violence, based in part on the use of risk-assessment actuarial evidence, was admissible because the actuarial instruments passed the Frye test. In so doing, the Roeling court noted that,
[c]ourts in Florida and other jurisdictions have also considered the admissibility of expert opinion testimony regarding propensity to commit acts of sexual violence in the future which is based in part on use of risk-assessment instruments. Not one court has held such testimony inadmissible as a matter of law.
Roeling v. State, 880 So.2d 1234, 1239 (Fla. 1st DCA 2004). See, e.g., Rodgers v. State, 875 So.2d 737, 739 (Fla. 2d DCA 2004) (holding that trial court did not err in allowing testimony regarding the use of RRASOR, VRAG, MnSOST-R, and PCL-R); Lee v. State, 854 So.2d 709, 712 (Fla. 2d DCA 2003) ("we conclude that the trial court did not err by allowing the [actuarial] test results to be presented to the jury as part of the experts' testimony."); Jackson v. State, 833 So.2d 243, 246 (Fla. 4th DCA 2002) (upholding the trial court's determination that the actuarial instruments "are generally accepted in the relevant scientific community as part of the overall risk assessment for sexual predators.").[4] Accordingly, there is no basis to reverse the judgment on this ground. See Chase v. Cowart, 102 So.2d 147, 150 (Fla.1958) (holding that result in trial court must be affirmed if right, even if right for wrong reason). See also Byers v. Ritz, 890 So.2d 343, 349 (Fla. 3d DCA 2004) (same).

V
For his next issue on appeal, the appellant argues that the use of the term "sexually violent predator" should have been excluded both from the trial and the jury instructions because of its prejudicial and inflammatory nature. The Second District Court of Appeal has recently addressed this precise issue and observed that the supreme court has expressly permitted both the "State and court to use the term `sexually violent predator' to explain *1169 to the jury that their job is to determine whether the defendant meets this status." Burton v. State, 884 So.2d 1112, 1114 (Fla. 2d DCA 2004) (citing Standard Jury Instructions  Criminal Cases (99-2), 777 So.2d 366, 367 (Fla.2000)); Rodgers v. State, 875 So.2d 737, 740-41 (Fla. 2d DCA 2004). "The only caveat to the use of the term is that it must not become a `feature of the trial.'" Burton, 884 So.2d at 1114. As did the court in Burton and Rodgers, we cannot conclude that use of the particular phrase became a feature in the proceeding below. Accordingly, we find no error as to this point.

VI
In his final issue on appeal, the appellant maintains that photographs developed from film found in his car during his arrest for sexual battery in 1990 should have been excluded in the civil trial below because there was no evidence of when the pictures were taken or who took them. Specifically, eight days after the appellant's commission of the 1990 sexual battery, the police found a camera with undeveloped film in the car in which he was living. The photographs developed from the film depicted women on the beach lying down, some topless, and others depicted women's crotch and buttock areas. The appellant appeared in one of the pictures.
During the trial, the State was permitted to introduce these photographs into evidence and utilize them during the testimony of one of its experts, Dr. Alan Waldman. Dr. Waldman interviewed and evaluated the appellant and opined that the appellant was a sexually violent predator. He further testified that the photographs supported his diagnosis, even though there was no evidence as to whether these photographs were taken before or after the appellant's commission of the 1990 sexual battery. According to Dr. Waldman's testimony, the photographs supported his opinion and refuted the appellant's claim that the 1990 rape was a spontaneous occurrence. Dr. Waldman opined that these photographs could serve as a sexual stimulus for the appellant or that they could depict the stalking of potential victims.
We reject the appellant's contention that the trial court abused its discretion in admitting these photographs into evidence over a relevancy objection. See Ashley v. State, 370 So.2d 1191, 1194 (Fla. 3d DCA 1979) ("Evidentiary questions of materiality, relevancy and competency are for the resolution of the trial court in the exercise of sound discretion, and rulings on admissibility will not be disturbed unless an abuse of discretion appears."). Where, as here, the State's expert utilized the photographs in support of his diagnosis and to refute the appellant's contention that the 1990 rape was a spontaneous occurrence, we cannot conclude that the photographs were irrelevant to the issue of whether the appellant is a sexually violent predator. See Straight v. State, 397 So.2d 903, 906 (Fla.1981) ("The basic test of admissibility of photographs ... is not necessity, but relevance."). See also Metro. Dade County v. Zapata, 601 So.2d 239, 244 (Fla. 3d DCA 1992) ("Photographs can be relevant to a material issue either independently or as corroborative of other evidence.").
The objection by the defense that it was unknown who took the pictures or when they were taken would therefore go to the weight rather than the admissibility of the photographs. The court did not abuse its discretion in overruling the objection and admitting the photographs.
Thus, based upon the foregoing, we find no reversible error in this proceeding and affirm the civil order under review.
Affirmed.
NOTES
[1] This statute provides in pertinent part:

(10) "Sexually violent predator" means any person who:
(a) Has been convicted of a sexually violent offense; and
(b) Suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for long-term control, care, and treatment.
[2] See Frye v. United States, 293 F. 1013 (D.C.Cir.1923).
[3] Dr. Parker also testified as to the nature of treatment to be received by defendants who are civilly committed.
[4] See also People v. Simons, 213 Ill.2d 523, 290 Ill.Dec. 610, 821 N.E.2d 1184, 1193 (2004) ("We recognize, of course, that `relying exclusively upon prior judicial decisions to establish general scientific acceptance can be a `"hollow ritual"' if the underlying issue of scientific acceptance has not been adequately litigated.' This is not a concern here, however, as the general acceptance of actuarial risk assessment has been thoroughly litigated in several states[.]") (citations omitted); State v. Strauss, 106 Wash.App. 1, 20 P.3d 1022, 1025 (2001) ("Regardless of whether or not the actuarial instruments in this case are novel, it appears that the relevant scientific community generally accepts them.").