WELLS, Judge.
 

 In these separate petitions for writ of certiorari, the Justice Administrative Commission seeks review of two final orders directing it to pay attorneys’ fees to two attorneys, Manuel Garcia and Maria Berry, for representing putative fathers in separate termination of parental rights (“TPR”) proceedings. We consolidate the petitions for purposes of review and grant the petitions, finding that the trial court departed from the essential requirements of the law in ordering the Commission to pay attorneys’ fees where indigency was not, because it could not be, determined.
 
 See Anderson v. E.T.,
 
 862 So.2d 839, 840 (Fla. 4th DCA 2003) (stating that a petition for writ of certiorari is the proper method for reviewing orders awarding attorney’s fees to court-appointed counsel).
 

 The facts in both of these cases are substantially the same. In both cases, the Department of Children and Families filed petitions to terminate the parental rights of fathers whose whereabouts could not be determined. Because their whereabouts were unknown, both fathers were served with TPR petitions and noticed of statutorily mandated advisory hearings by publication.
 
 See
 
 § 39.801(3)(a), Fla. Stat. (2007) (providing that before parental rights may be terminated, notice of an advisory hearing for the petition and a copy of the petition must be personally served on the parents of the child at issue); § 39.801(3)(b), Fla. Stat. (2007) (providing that if notice cannot be served personally, “service of process must be made as specified by law or civil actions”); Fla. R. Juv. P. 8.505(c) (providing for service by publication in termination of parental rights proceedings for “[p]arties whose identities are known and on whom personal service of process cannot be effected”).
 

 In each case, the fathers failed to appear at an advisory hearing and were deemed to have consented to termination of their parental rights.
 
 See
 
 § 39.801(3)(d), Fla. Stat. (2007) (providing that failure to personally appear at an advisory hearing following notice constitutes consent to termination of parental rights). Despite the fact that neither father appeared at an advisory (or any other) hearing, both were found to be indigent and had counsel appointed to represent them in their respective TPR proceedings. The orders appointing counsel were then forwarded to the Commission.
 

 Following termination of these fathers’ parental rights, the attorneys appointed to represent them, Mr. Garcia and Ms. Berry, submitted bills to the Justice Administrative Commission for payment. The bills were rejected because the Commission could not determine that these fathers were indigent. The attorneys petitioned the trial court for relief, which ordered the Commission to process the attorneys’ bills “for payment by the State of Florida.” These petitions ensued.
 

 
 *698
 
 We agree with the Commission that the court below departed from the essential requirements of the law in requiring it to process, and to have paid, bills for attorneys’ fees for representation of individuals who were not properly determined to be indigent. Section 89.807 of the Florida Statutes governs the right to counsel in proceedings such as these and expressly authorizes appointment of counsel for indigent parents:
 

 At each stage of the proceeding under this part, the court shall advise the parent of the right to have counsel present.
 
 The court shall appoint counsel for indigent parents.
 

 § 39.807(l)(a), Fla. Stat. (2007) (emphasis added). This provision confers no authority to appoint counsel for parents who are not indigent. It also confers no authority to order the state, in contravention of section 29.007 of the Florida Statutes, to pay the fees of an attorney appointed to represent someone who is not indigent.
 
 See
 
 § 29.007(1), Fla. Stat. (2007) (authorizing the use of state revenues to pay fees incurred by attorneys appointed to “handle cases where the defendant is indigent”);
 
 see also
 
 § 27.40(1), Fla. Stat. (2007) (generally authorizing appointment of counsel in criminal or civil proceedings for those entitled to counsel under “the Federal or State Constitution or as authorized by general law”).
 

 Neither of the fathers in these two cases appeared at any stage of the proceedings below. Thus, no determination of indigen-cy was possible as to either of them.
 
 See
 
 § 57.082, Fla. Stat. (2007) (requiring disclosure of net income, assets, liabilities and debts for determination of indigent status in civil cases); § 39.807, Fla. Stat. (2007) (providing that a dependency court may appoint counsel for indigent parents and shall enter its findings regarding indigen-cy); Fla. R. Juv. P. 8.515(a)(4) (same). Absent such determinations, counsel should not have been appointed and certainly no payment by the state mandated.
 

 The two orders on review do not, however, stem from these provisions which have been “on the books” and in operation for a substantial period of time. Rather, they spring from the trial court’s interpretation of this Court’s recent decision in
 
 S.S. v. State, Department of Children & Family Services,
 
 976 So.2d 41 (Fla. 3d DCA 2008), and the trial court’s conclusion that the Commission was estopped from denying payment. Neither reason supports the orders on appeal.
 

 In
 
 S.S.,
 
 this Court, in a short concise opinion, did two things. First, we reversed a final judgment terminating a mother’s parental rights because the record demonstrated that the mother, who had failed to appear at an advisory hearing, had not been properly served with notice of the TPR petition and the advisory hearing:
 

 In this case, however, DCF and the record do not establish that the mother was personally served with the statutory notice required by paragraph 39.801(3)(a), Florida Statutes (2006):
 

 FAILURE TO PERSONALLY APPEAR AT THIS ADVISORY HEARING CONSTITUTES CONSENT TO THE TERMINATION OF PARENTAL RIGHTS OF THIS CHILD (OR CHILDREN). IF YOU FAIL TO APPEAR ON THE DATE AND TIME SPECIFIED, YOU MAY LOSE ALL LEGAL RIGHTS AS A PARENT TO THE CHILD OR CHILDREN NAMED IN THE PETITION ATTACHED TO THIS NOTICE.
 

 Because the delivery of this notice is an express condition precedent to the draconian consequences of a parent’s failure to appear, it follows that, on that
 
 *699
 
 point alone, the termination of parental rights in this case must be reversed and remanded for further proceedings.
 

 Id.
 
 at 42 (footnote omitted).
 

 Second, we reiterated what earlier precedent had already made clear: that DCF must place evidence in the record to establish a prima facie case sufficient to support termination of a parent’s rights even where that parent, after proper notice, fails to appear and is statutorily deemed to have consented to termination of his or her parental rights:
 

 But in the event that, after confirmed service of the second amended petition for TPR
 
 including
 
 the printed statutory notice, S.S. fails to appear at the advisory hearing, DCF nevertheless must prove, by competent substantial evidence, those allegations in the petition relied upon by DCF to support a final judgment in conformance with the statutory requirements for TPR. We previously have held that a trial court errs when it terminates parental rights following a default but takes no evidence in support of the termination.
 
 See R.H. v. Dep’t. of Children & Family Servs.,
 
 860 So.2d 986, 988 (Fla. 3d DCA 2003). The effect of an “implied, presumed or constructive consent” under paragraph 39.801(3)(d) has been analyzed in detail in
 
 Department of Children & Families v. AS.,
 
 927 So.2d 204 (Fla. 5th DCA 2006). That analysis concluded squarely, and we agree, that “consent under section 39.801(3)(d) does not end the judicial labor of the trial court; it must then proceed to receive evidence to support the grounds alleged in the petition for termination.”
 
 Id.
 
 at 208.
 

 We reject DCF’s argument that
 
 In re W.C.,
 
 797 So.2d 1273 (Fla. 1st DCA 2001) excuses the presentation of evidence following a respondent parent’s non-appearance at the advisory hearing. The case does not say that, apparently because the appellant there did not raise the issue.
 

 S.S.,
 
 976 So.2d at 42-43.
 

 Absolutely nothing in these pronouncements hints or suggests, much less states, that a parent who does not appear for an advisory hearing, and who thereby has been deemed to have consented to termination of his or her parental rights, must have counsel appointed to stand mute while DCF spreads its case on the record. •We therefore reject the trial court’s conclusion that because “the 3rd District issued this opinion [in S.S.] that we consider somewhat bizarre where we now have to give parents who don’t show up almost more due process than parents who do,” counsel must be appointed and paid for by the state without any showing of indigen-cy.
 

 We also reject the determination that the Commission was somehow es-topped from denying payment of the attorneys’ fee bills because it failed to immediately object to appointment of counsel upon receipt of the respective appointment orders. There is no basis in law or fact to support this finding.
 

 Estoppel, whether asserted as a claim for relief or as a defense, has recognized essential elements. They are: “(1) a representation as to a material fact that is contrary to a later-asserted position, (2) reliance on that representation, and (3) a change in position detrimental to the party claiming estoppel, caused by the representation and reliance thereon.”
 
 State v. Harris
 
 881 So.2d 1079, 1084 (Fla.2004). As the Commission points out, it is not a party to dependency proceedings and it is not present when counsel is appointed; thus, it makes no representations whatsoever regarding payment at the time of appointment. Furthermore, although cop
 
 *700
 
 ies of the orders appointing counsel in these two cases were provided to the Commission, they do not indicate how indigen-cy was determined, or even that the fathers failed to appear before the court below. Thus, the Commission rightly notes that it did not have all the information necessary to make a payment determination in these cases until after the attorneys submitted their fee bills and the Commission reviewed them for compliance with statutory and contractual requirements.
 
 See
 
 § 27.5304(2),(4) Fla. Stat. (2007) (requiring court-appointed counsel to submit their fee bills “within 90 days after the disposition of the case at the lower level,” and requiring the Commission to “review an intended billing by private court-appointed counsel for attorney’s fees based on a flat fee per case for completeness and compliance with contractual and statutory requirements”). More importantly, the Commission’s silence upon receipt of the orders appointing counsel could not operate as an estoppel in these cases because Mr. Garcia and Ms. Berry had equal knowledge of the facts herein, if not more, and also the same means of ascertaining that knowledge.
 
 See Mizell v. Deal,
 
 654 So.2d 659, 663 (Fla. 5th DCA 1995) (stating that “estoppel based upon silence cannot exist where the parties have equal knowledge of the facts or the same means of ascertaining that knowledge”).
 

 Simply put, there is no evidence to support a finding of estoppel so as to justify an order obligating the Commission to pay the attorneys appointed in these cases. Rather, the onus was on counsel appointed by the trial court to ascertain whether his or her client was indeed indigent and had been properly determined to be so, and if not, to timely seek relief.
 

 For these reasons, the Commission’s petitions are granted and the orders requiring it to the pay Mr. Garcia’s and Ms. Berry’s fees are quashed.